NEW-YORK,
Nov. 1807.

Folliard
v.
Wallace.

\* 3 *Term*,308.
4 *Term*, 580.

</div>

New trial granted.

## Folliard *against* Wallace, survivor of Wells and Wallace.

THIS was an action of *covenant*. The declaration contained four counts. The first count set forth the deed, bearing date the 19th of *August*, 1795, by which the de-

<div align="right">

W. covenanted, that in case the title to a lot of land conveyed to him by

</div>

F., should prove good and sufficient in law against all other claims, that he would pay to F., three months after he should be well satisfied that the title was undisputed and good against all other claims, the sum of 150 dollars.     In an action brought by F, against W. for the money, it was held that the award of the Onondaga commissioners on the title in favour of W. ought to satisfy him, and, that the award of the commissioners was a public act of which he was bound to take notice at his peril, without any notice from F.     W. in his plea to avoid the payment of the 150 dollars, alleged, that one H. and his wife claimed title to the lot of land conveyed to him by F., and against the title of F., but the plea was held to be bad, because it did not state that the title of H. and his wife was a lawful claim or title, and prior to, and better than the title conveyed by F.     Though it be not necessary for the defendant to set forth the particulars of such title, yet he must allege it to be a lawful title, and existing prior to, and at the time of the deed to him.     It is not enough for the defendant to allege that he is not satisfied with the title, without some good reason be assigned for his dissatisfaction, as some lawful encumbrance or claim against it.     The defendant is not to judge for himself, but the law will determine when he ought to be satisfied.

fendant and *Wells* engaged, that in case the title sold to them in fee that day by the plaintiff, being for lot No. 12, in the township of *Hector*, containing 600 acres, should prove *good and sufficient in law against all other* CLAIMS *whatsoever,* that they would pay to the plaintiff, *three months* after they should be *well satisfied* that they held the said 600 acres of land *undisputed* by any person whatsoever, and *against all other* CLAIMS as aforesaid, the further sum of 60*l.* The plaintiff averred, that after the death of *Wells,* to wit, on the 13th *April,* 1800, the *Onondaga* commissioners adjudged and awarded that the title to the said lot having been satisfactorily deduced to *Wells & Wallace,* the defendant, *Wallace,* was entitled to an indefeasible estate of inheritance in and to one moiety of the lot, and the children of *Wells* to the other moiety, subject to the dower of the widow of *Wells*; and that no dissent or ejectment was entered by any person within the time required by law, of all which the defendant, on the 1st day of February, 1806, had notice. The plaintiff further averred, that the title in fee was fully vested in the defendant and the heirs of *Wells,* and so the defendant hath broken his covenant, &c. The second count was to the like effect, with an averment that the defendant and the heirs of *Wells were satisfied,* and that the plaintiff conveyed to them a perfect title. The third count was to the like effect, averring also that there was no elder or better title. The fourth count contained a *colloquium,* and the averments as in the other counts.

The defendant pleaded three pleas. The first plea, after craving *oyer* and setting forth the covenants, was to all the counts, that the award of the commissioners set forth in the first count did not vest a title in fee in the defendant and the heirs of *Wells,* against all persons, at the expiration of three years thereafter, because, the act provides that it shall not extend to, nor prejudice, infants, *feme coverts,* or persons not of sound mind, or in prison,

who are allowed three years, after their disability is re-moved, to make their dissent, and to bring their suit, and avers, that *John Henry* and *Lydia*, his-wife, on the 1st *November*, 1805, before the bringing this suit, did claim title to the said lot, and still do claim title adverse to the title of the defendant and the heirs of *Wells*, and in right of *Lydia*, under a deed purporting to be executed by the plaintiff to *Abraham Nelson*, anterior to the deed to the defendant and *Wells;* and that the said *Lydia* being a *feme covert*, was not barred by the said award, and the limitation of three years thereafter, and so the said title hath not proved to be good and sufficient, but is subject to the said claim ; by reason whereof the defendant and the heirs of *Wells* have not been satisfied that the said lot can be held undisputed by any person whatever, and this he is ready to verify, &c.

The second plea was also to the *whole* declaration, and set forth—that by the act for registering *Onondaga* deeds, passed the 8th *January*, 1794, all deeds concerning the said lands were, before the 1st *May*, 1794, to be deposited with the clerk of the city and county of *Albany*, and all deeds not so deposited were to be adjudged fraudulent and void against subsequent purchasers; and that by the act on the same subject, passed the 27th *March*, 1794, the time for depositing the said deeds was prolonged to the 1st *May*, 1795, and that a deed dated the 5th *August*, 1784, and purporting to be made by the plaintiff to *Abraham Nelson*, was deposited with the clerk of *Albany*, within the said time, by which deed the plaintiff released all his rights and claims, as a soldier, to the military lands to the said *Abraham Nelson* and his heirs ; and the de-fendant avers, that the lands so released and the said lot are the same; and that before the commencement of the suit, *i. e.* on the 13th *April*, 1801, and both before and since, *John Henry* and *Lydia*, his wife, did, and do still claim title to the same, in right of the said *Lydia*, under

NEW-YORK.
Nov 1807.

Folliard
v.
Wallace.

[* 398]

the said deed to *Nelson*, and by virtue thereof do keep the defendant, and the heirs of *Wells* out of possession ; and that the said *Lydia*, being a *feme covert*, was not bound by the said award, and the limitation of three years thereafter, because, by the act of the 24th [*]*March*, 1797, the rights of *feme coverts*, &c. were saved, so that they make their dissent within three years after disability removed, and bring their suit ; and that the title to the said lot hath not yet proved good and sufficient in law against all claims whatsoever, but is still subject to the same claim, which is not barred, &c.—and so the defendant and the heirs of. *Wells* are not satisfied, &c. that the said lot can be held by them undisputed, and this he is ready to verify, &c.

In the third plea the defendant alleged, that the said award at the expiration of three years thereafter, did not vest a title in fee in the defendant and heirs of *Wells*, against all persons, because the act of the 24th *March*, 1797, provides against the case of *feme coverts*, *infants*, &c. if they make their dissent, and bring their suit within three years after their disability is removed, and that *Henry* and *Lydia*, his wife, before the said award, to wit, on the 12th *April*, 1800, did claim title to the lot, and still do in a right of the said *Lydia*, as a *feme coveret*, under a deed made, *as therein alleged*, by the plaintiff to *Nelson*, on the 5th *August*, 1784, and deposited in the clerk's office, according to law ; and that by virtue of that deed, the said *Henry* and wife do keep the defendant and the heirs of *Wells* out of possession ; and that the said *Lydia*, being a *feme covert*, at the time of the award, was not barred, &c.—and so the title, &c. is not good and sufficient, but subject to the said claim, &c. and the defendant and the heirs of *Wells* are not satisfied, &c.

To the first *plea* there was a *special demurrer*, because it was multifarious, double, and no answer to the whole declaration ; because it does not set forth that the com-

missioners did act upon the deed said to be executed by
the plaintiff, nor does it state how *Lydia*, the wife of
*Henry*, derives title under *Nelson;* because it is argu-
mentative, and amounts to the general issue ; and be-
cause it does not aver an existing good title in *Henry* or
his wife, and is no answer to the averment in the decla-
ration, that the defendant's title is good, and that he is
satisfied.

[*]To the second plea, the plaintiff (*protesting* that the
defendant and the heirs of *Wells* have a good title, and
are well satisfied, and that the deed said to have been
executed by the plaintiff to *Nelson* is a *forgery*, and
known to be such by the defendant, and that *Lydia* is a
stranger to it, and so could derive no title under it) re-
plied, that the commissioners had the deed, said to have
been executed by the plaintiff to *Nelson*, under conside-
ration, and decided against it, and that an absolute title
was awarded to the defendant and the heirs of *Wells*, of
which they are satisfied, and this he is ready to verify,
&c.

*Replication* to the 3d plea, (*protesting* that the defend-
ant by collusion suffers *Henry* and wife to keep him out
of possession, and protesting, &c.) that the defendant
hath a good title, of which he is satisfied, and this he is
ready to verify, &c.

To the *replication* to the second plea, there was a *re-
joinder*, that the defendant does not know *Nelson's* deed
to be a forgery, and that he and the heirs of *Wells* are
not well satisfied with their title, and this they are ready
to verify, &c.

*Rejoinder* to the second replication, that the defend-
ant hath not suffered *Henry* and his wife to keep posses-
sion by collusion or consent, and that he is not well sat-
isfied with his title, and this he is ready to verify, &c.

There was a *special demurrer* to the two rejoinders,
because they traverse matters alleged in the replication

NEW-YORK,
Nov. 1807.

Folliard
v.
Wallace.

[* 399]

NEW-YORK, by way of protestation only, and they neither confess,
Nov. 1807.
avoid, nor deny that part of the replication that the com-
Folliard missioners had *Nelson's* deed under examination, and
v.
Wallace. decided against it ; because they conclude with a verifi-
cation, and not to the country, and because they are ar-
gumentative, want certainty, &c.

    *J. W. Yates*, in support of the demurrers. The first
plea is bad. 1. Because it does not aver an actually
existing better or elder title, than the one granted by
* *Dyer,* 128. the plaintiff.* It merely states the deed to *Nelson* as al-
2 *Roll. Rep.*
[*400] leged to be executed [*] by the plaintiff : 2. The plea
21. 1 *Brownl.* does not state the nature and extent of the title of *Henry*
80. *Cro. Jas.*
425. *Winch,* and his wife, whether they claim in fee, for life, for years,
25. *Cro.Eliz.* at will, or otherwise. The defendant merely avers that
421. *Moore,*
294. 1 *Mod.* they claim title generally. As the extent of the title
101. *Vaugh-*
*an,* 121, 122. claimed is not set forth, the court will intend the least
3 *Keble,* 246. estate. Covenants and deeds-poll are to be construed
*Hob.* 34.
*Moore,* 861. most strongly against the covenantor, and most benefi-
*Cro. Eliz.* cially to the other party.* If it was an estate for years,
823. 4 *T.*617.
it must be considered as a mere chattel real, and could
* 1 *Lev.* 102. pass to the husband and be reduced to his possession,
1 *Syd.* 151. and so was barred by the award of the commissioners.
*T.Raym.*464.
*Sir T. Jones,* 3. The plea, beside being argumentative and double,
191. *Cro.* offers an issue on a fact not traversable in its nature,
*Eliz.* 823.
namely, whether the defendant was or was not satisfied
with the title. Whether the defendant be satisfied or
not, must be a deduction from the fact of title or no title.
The defendant must show good reasons for not being
satisfied ; and not a mere arbitrary declaration of his
dissatisfaction. The reason assigned by the defendant
is frivolous. It amounts to this, that there is an adverse
claim, which I neither know, nor can affirm to be good,
and *therefore* I am not satisfied. 4. None of the pleas
answer the plaintiff's express averment, that the defend-
ant and the heirs of *Wells,* have a good title. 5. The
third plea, though it professes to go to the whole decla-

ration, answers only the count which sets forth the award of the commissioners, and is wholly silent as to the other counts. The rejoinders are also bad.

*Champlin,* contra. We admit that the rejoinders are bad. The only question is on the demurrer to the plea. The declaration does not state that any notice of the award by the commissioners was given to the defendant. The defendant was to be satisfied as to the title; the money was payable on that condition, and he was to be the sole judge of that satisfaction. This was a precedent condition, and the question is, whether he was satisfied as to the goodness of the title, not whether, in judgment of law, there was a good title. [*]Again, though the declaration avers that the defendant was satisfied, it does not state that he was so three months afterwards.—— There could be no violation of the contract until the three months had elapsed. Three things were essential for the plaintiff to aver in his declaration. 1. A good and sufficient title. 2. That the defendant was satisfied with it. 3. That three months had elapsed.

The general averment in the plea as to the outstanding title is sufficient. In *Hodgson* v. the *East India Company,** it was decided that the party might state generally another title, without setting forth the particulars of such title.

*Yates,* in reply. The defendant in his plea does not state a *better* title outstanding. No notice of the award was necessary. No notice is required unless the fact is exclusively within the knowledge of the plaintiff. Here the fact was equally within the knowledge of both parties, and the defendant was bound to know it at his peril.† He was a party to the award, and was before the commissioners. There is a substantial averment of notice. After a plea in bar the defendant cannot avail himself of this objection. The plaintiff has averred that the award was made more than three months before the suit was

NEW-YORK,
Nov. 1807.

Folliard
v.
Wallace.

[*401]

* 8 *Term,*278.

† *Cro. Jac.*
390. 1 *Roll.
Rep.*314.*Cro.
Car.* 390. 1
*Keble,* 681.
*Jones,* 56. 5
*Comyns' Dig.*
366. *C.* 70.

brought. Again, the time of the title's proving good must have relation back to the date of the plaintiff's deed, on the 19th *August*, 1795, for the decision of the commissioners is on that deed.

KENT, Ch. J. The questions in this case principally respect the validity of the pleas. The declaration is correct, and states all that was requisite, in the first instance, to show a good and undisputed title conveyed to the defendant, and that he was bound to pay the money. He was to pay three months after being well satisfied, &c. and the award of the *Onondaga* commissioners ought to have satisfied him, until some lawful title appeared to controvert the one held under that decision. As that award was a public act, of which the defendant must be presumed to be conusant equally with the plaintiff, he was bound to take notice of it at his peril, and without [*] further information [*]from the plaintiff. (*Cro. Ja.* 390. 432.) It was then incumbent upon him, in order to avoid the obligation to pay, to state in his plea a lawful claim or title to the land prior to, and better than, the one conveyed to him by the plaintiff. Though the title derived from the plaintiff was to prove good and sufficient in law against all other claims, yet the covenant must be construed to mean *lawful* claims, in like manner as a covenant against the acts of all persons whomsoever, is understood to mean the acts of persons having lawful title, and not to extend to the acts of wrongdoers. So a general warranty is restrained to lawful interruption. (2 *Saund.* 178. and note 8. 3 *Term*, 584. 587. *Greenby*, &c. v. *Wilcocks, ante,* 4.) The law will never presume that the covenant applied to the *wrongful* claims of others, unless it be so expressed, because the law gives full protection against all such claims. But the first plea states only, that, *Henry* and his wife did claim title to the lot under a deed purporting to have been executed by the plaintiff to one *Nelson.* It was not necessary for the de-

[* 402]

fendant to have set forth the particulars of that title, for he was a stranger to it; but he ought, at least, to have alleged that the claim of *Henry* and his wife was a *lawful claim*, and lawfully derived under the deed to *Nelson*, and that the title existed before or at the time of the deed to himself. This appears, from the course of the authorities and precedents, to be an indispensable averment. (*Wotten* v. *Hele*, 2 *Saund*, 177, and note 10. at p. 181, *a. Foster* v. *Pierson*, 4 *Term*, 617. *Hodgson* v. *E. I. Company*, 8 *Term*, 278.) Without such an averment the court cannot take notice of the claim, for it may be one altogether frivolous and without colour, and not maintained with sincerity. Nor will it do for the defendant to say he was not satisfied with his title, without showing some lawful incumbrance or claim existing against it. A simple allegation of dissatisfaction, without some good reason assigned for it, might be a mere pretext, and cannot be regarded. If the defendant were left at liberty to judge for himself when he was satisfied, it would totally destroy the [*]obligation, and the agreement would be absolutely void. But here was a real obligation contracted, and the true and sound principle is laid down in *Pothier*, (*Traite des Obligations*, No. 48.) that if *A.* promises to give something to *B.* in case he should judge it reasonable, it is not left to *A.'s* choice to give it or not, since he is obliged to do so, in case it be reasonable. The law in this case will determine for the defendant when he ought to be satisfied; and until he shows some lawful claim or title to countervail that which he derived from the plaintiff, and which has been confirmed by the award of the commissioners, the intendment of law is, that his title is complete, and he is consequently, bound to pay. The first plea of the defendant is, therefore, bad.

The only circumstance that may be thought materially to distinguish the second and third pleas from the first, is the allegation that *Henry* and his wife, by virtue of

[* 403].

their claim under *Nelson's* deed, keep the defendant and the heirs of *Wells* out of possession. But here is the same want of an averment of the *lawfulness* of the claim of *Henry* and his wife, and for aught that appears in the pleas, they may be mere *wrongdoers* in withholding the possession. The title of the defendant, as derived from the plaintiff, is to be deemed a lawful and valid title, for it has received the sanction of the commissioners, and the claim of *Henry* and his wife must be deemed frivolous and illegal, for it has never received any judicial support, and is not even alleged to be legal. Without, therefore, examining the merit of the subsequent pleadings, I am of opinion, that the first fault is in the bar, that the three pleas are equally bad, and that the plaintiff is entitled to judgment.

SPENCER, J. and VAN NESS, J. concurred.

THOMPSON, J. not having heard the argument, gave no opinion.

Judgment for the plaintiff.