THE PEOPLE ex rel. GEORGE W. KENYON, Respondent, *v.* JAMES SUTHERLAND, Appellant.

Where a paper, purporting to be an affidavit taken in a judicial proceeding, indicates the proceeding in which it is made, has a proper venue, is subscribed by the deponent, and has a *jurat* in the usual form, signed by an officer having due authority to administer an oath, the omission of the name of the deponent in the body of the instrument is not, as a general rule, a fatal defect, and the paper is effectual as an affidavit.

The test of the legal sufficiency of the paper is, would an indictment for perjury lie against the person who signed and swore to it, if it was willfully false ? An officer may receive and give credence to any paper upon which an indictment for perjury would lie and be maintained.

*It seems,* however, that where the affidavit, to be effectual, must be made by one having and acting in a certain character, or personal capacity, the paper should state the name of the deponent, and that he has that character or capacity.

An affidavit presented in proceedings under the two-third act, as proof of service of the order requiring creditors to show cause why an assignment of the insolvent's estate should not be made, and he be discharged, as prescribed by the act of 1847 (§ 2, ch. 366, Laws of 1847), averred that deponent " served a printed notice, of which the following is a copy," it was objected that no notice followed the affidavit; in the printed appeal book a notice did follow the affidavit, and one preceded it. *Held,* that it did not appear that the affidavit was defective in this particular.

The affidavit averred that the printed notice was served " on each of the following named persons, on the days and in the manner next herein specified ;" then followed a list of names, under a column headed " names of creditors," and in another column, on the same line with each name the statement of the residence, save, in one instance, where the word " unknown " was written. Following the list was this averment, " By depositing, 1860, April 9th, in the post-office in the city of Brooklyn, a letter envelope directed to each of the foregoing creditors, at the place of residence hereinbefore designated, and in each envelope was a printed notice, of which the following is a true copy, and on each envelope so directed was placed a post-office stamp to pay the legal postage of each letter." *Held*, that the averments were sufficient to show service by mail upon each of the creditors named.

The residence of most of the creditors was stated in the affidavit as New York city. No number or street was named. *Held*, that this did not show such a disregard of the law as to vitiate the proceedings ; that the requirement to give notice was dependent upon the place of residence being known to the insolvent; that service by letter could be no more perfect, as to the address, than the knowledge of the insolvent, and it could not be said that he did not serve the notices to the best of his knowledge, nor could it be said that the proof was not such as the officer might legally be satisfied with.

The name of one of the creditors was Charles Storrs. This name, so spelled did not appear in the list of creditors, but " Charles Stores " appeared, who was designated as assignee of a firm. *Held*, that it was a case of *idem sonans*, and was a sufficient designation of the creditor.

It appeared that two-thirds of the creditors, claiming to represent more than two-thirds of the debts, signed the petition ; the liability of the insolvent as to a portion of these debts was as indorser. It appeared that the paper indorsed had been protested for non-payment, and the insolvent had thus become liable. *Held*, that on this account, and as the effect of the notice of discharge was to exonerate the insolvent from all liability incurred by indorsement, these debts were properly included.

(Submitted March 17, 1880 ; decided April 6, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment of Special Term, setting aside a discharge of the defendant in proceedings under the two-third act, which were brought up for review by *certiorari.* The relator moved as assignee of Charles Storrs, a creditor of defendant. (Reported below, 16 Hun, 192.)

The principal questions arose on the form of the paper purporting to be an affidavit of service upon the creditors of the order to show cause

Statement of case.

The paper was as follows:

"CITY OF BROOKLYN, }
   *County of Kings,* } *ss. :*

being duly sworn, doth depose and say, that he served a printed notice, of which the following is a true copy, on each of the following named persons, on the days and in the manner next herein specified, that is to say."

Here followed the names, under the column headed "names of creditors," and on the line with each name, under the head of "residence," the place of residence. As to most of the creditors, this was stated "New York city." In the list of creditors was "Charles Stores, assignee of Hanks & Co." The affidavit then proceeded:

"By depositing, 1860, April 9th, in the post-office, in the city of Brooklyn, a letter envelope directed to each of the foregoing creditors at the place of residence hereinbefore designated, and in each envelope was a printed notice, of which the following is a true copy, and on each envelope so directed, was placed a post-office stamp to pay the legal postage of each letter to its place of destination.

W. B. BOWER.

Subscribed and sworn to before }
   me, this 12th day of April, 1860. }
                    W. W. FOWLER, *Notary Public.*"

Further facts appear in the opinion.

*B. F. Sawyer* for appellant. This court can only inquire as to jurisdictional matters in this proceeding. (*Birdsall* v. *Phillips,* 17 Wend. 464; *In re Talver,* 6 id. 632; *Ex parte Hagaman,* 2 Hill, 415; *People ex rel. Stryker* v. *Stryker,* 24 Barb. 649.) When proof of service of the notice on creditors has been made to the satisfaction of the judge, his decision is final and conclusive; it is not a jurisdictional question. (R. S., title 1, part 2, chapter 5, article 3; *Rusher* v. *Sherman,* 28 Barb. 416; *Soule* v. *Chase,* 1 Abb. Pr. [N. S.] 48.) The order to show cause required by section 3 is an incident to jurisdiction, but

not essential to it. (*In re Jacobs*, 12 Abb. Pr. [N. S.] 273.) The affidavit of service on creditors was sufficient, although the deponent's name was absent from the beginning of it. (*Jackson* v. *Virgil*, 3 Johns. 539 ; *Millins* v. *Shafer*, 2 Denio, 60 ; *Soule* v. *Chase*, 1 Abb. Pr. [N. S.] 48 ; *People ex rel. Stryker* v. *Stryker*, 24 Barb. 649 ; *Norwood* v. *Hollister*, 2 Seld. 315, 316 and 317 ; *Small* v. *Graves*, 7 Barb. 576 ; 12 Pick. [Mass.] 572 ; *Ayers* v. *Scribner*, 17 Wend. 407 ; 6 Paige, 323 ; *Farr* v. *Marsteller*, 2 Cranch, 10.) The discharge will bar the debt, although the name of the creditor was not placed on the schedules, nor any notice given to him. (*Symonds* v. *Barnes*, 6 Bankrupt Register, 377 ; *Payne* v. *Able et al.*, 4 id. 220 ; *Knabe* v. *Hayes*, 71 N. C. 109 ; *Stern* v. *Nussbaum*, 47 How. Pr. 489 ; *Williams* v. *Butcher*, 12 B. R. 143 ; *Burnside* v. *Brigham*, 8 Met. [Mass.] 75 ; *Hubbell* v. *Crump*, 11 Paige, 310 ; *Campbell* v. *Perkins*, 8 N. Y. 430.)

*W. S. Logan* for respondent. The right to grant a discharge is purely statutory, and it is only after all the preliminaries required by the statute have been complied with that the judge has the power, if he has it at all, to discharge the defendant. (*Dieckerhoff* v. *Ahlborn*, 2 Abb. N. C. 372 ; *Marrow* v. *Freeman*, 61 N. Y. 515 ; *Lewis* v. *Page*, 8 Abb. [N. S.] 200 ; *Stanton* v. *Ellis*, 16 Barb. 319 ; *Small* v. *Wheaton*, 4 E. D. Smith, 306.) The affidavit of service was insufficient and proved nothing. (*Stanton* v. *Ellis*, 16 Barb. 322 ; *Brown* v. *Huchman*, 9 Johns. 75 ; *Vosburg* v. *Welch*, 11 id. 175 ; *Ladow* v. *Groom*, 1 Den. 429 ; Burrill's Law Dictionary, title *Affidavit ;* Bouvier's Law Dictionary, title *Affidavit ; Regina* v. *Bloxham*, 6 Q. B. 528 ; *Anonymous*, 18 Eng. Com. Law, 235.) There is not sufficient in the papers as to some of the pretended petitioning creditors, to make it appear that they were really creditors. (*Gellies* v. *Crawford*, 2 Hilt. 338.) The affidavits of the petitioning creditors do not state, sufficiently, the nature of the demand, and the general ground and consideration of the indebtedness, nor do the schedules of the insolvent set forth, sufficiently, the petitioning creditors' claims, the nature of the debt, or demand,

and the true cause and consideration of such indebtedness.     (2 R. S. 17, § 4; *Gellies* v. *Crawford,* 2 Hilt. 338.)

FOLGER, J.     There is no objection made to the form of the order discharging the insolvent from his debts. It will be effectual in its terms for that purpose, if the officer signing it has duly observed all the prerequisites of the statutes.

There are several particulars in which it is claimed that he has not.

*First.* It is contended that he did not have proof that notice of the order to show cause (2 R. S., p. 18, § 8) had been duly served upon the creditors. (Ch. 366, Laws of 1847, p. 470, §§ 1, 2.) By the last cited act he is prohibited from proceeding in the matter, when the place of residence of creditors is known to the insolvent, until proof shall have been given to his satisfaction of the service of the notice in the manner prescribed by the act. The petition of the insolvent averred knowledge of the general place of residence of all the creditors but one. The city judge should not have moved without proof of service of that notice. It would have been irregular to have done so, and would have vitiated all things thereafter done, unless the irregularity had been cured.

It is well to say, in view of a part of the argument for the appellant, that the satisfaction of the officer spoken of in the act is a legal satisfaction. He is to be convinced. His conviction is not to be arbitrary or capricious. It is to be brought about by means that are fit and enough to produce conviction in the mind acting judicially. He may no more be satisfied by that which the law will deem inadequate to produce conviction, than he may withhold his satisfaction when that proof is produced to him that the law will say he ought in reason to be satisfied with. (*Folliard* v. *Wallace,* 2 Johns. 395.) He is to be convinced by proof. Proof is the effect of evidence. The evidence might be oral, but then, prudentially, it should be reduced to writing, so that it could be kept. In the case in hand it was in writing. It was needful that it should be in such form and shape, and with such accompaniments, as to

show to the officer that some person's conscience had been bound by an oath or affirmation, and that what the written paper offered to him as averments of facts had been asserted therein and thereby under the sanction and obligation of an oath. It should appear to him by the paper presented to him that some person, by reason of that paper, had incurred the pains and penalties for perjury if the statements in it were willfully false; and the paper itself should show to him who was that person. The writing in this case was meant to be in the form of an affidavit; it was meant to be an affidavit, a judicial and not a voluntary one. An affidavit has been defined to be an oath in writing, signed by the party deposing and sworn to before an officer authorized to put an oath. (Bac. Abr., title *Affidavit*.) But the Supreme Court of this State has held that the writing is an affidavit in law, though not signed by the deponent, if his name appear in the body of it, and it be duly sworn to. (*Haff* v. *Spicer*, 3 Cai. 190; *Jackson* v. *Virgil*, 3 Johns. 540; *Millius* v. *Shafer*, 3 Den. 60.) Chancellor WALWORTH differed with the Supreme Court, and afterward held that an affidavit must be subscribed at the foot of it, giving as his reason that without it it would be difficult, if not impossible, to sustain a prosecution for perjury, especially where no persons other than the deponent and the officer were present when the former was sworn. (*Hathaway* v. *Scott*, 11 Pai. 173.) The reason given by the chancellor for his ruling is doubtless that which has governed in any requirements made for the forms and contents of an affidavit. The decisions have been exacting, that the title of the cause in which it purported to have been taken should be precisely and minutely set forth. (*Fores* v. *Diemar*, 7 T. R. 661; *Rex* v. *Sheriff of Surry*, 2 East, 181.) This was doubtless to establish that the oath was taken in a matter pending judicially; that it was not a voluntary affidavit. By rules of court the insertion of the true place of the deponent's habitation, and his true addition, has been required. (1 Lill. Abr. 53 F.; *Reg.* v. *Harrison*, 1 Jebb & Symes, 422; *Jarrett* v. *Dillon*, 1 East, 18.) And the statement in the *jurat* of the names of those sworn

when several persons joined in an affidavit. (1 Ell. & Bl. Appendix, xxiv.) This was doubtless for the sure identification of the person who took the oath ; and all of these requirements were to prevent escape from the penalty of perjury, if it had been committed. Now there was produced in this case to the officer a paper, which indicated the judicial proceeding in which it purported to have been made ; with a proper venue ; subscribed with what purported to be the name of a certain person ; and having a *jurat* signed by an officer having due authority to put an oath, which *jurat* declared that the paper was subscribed and sworn to before him on a day given. There was no name of a deponent in the body of the affidavit. The case is the converse of those cited above from the Supreme Court decisions. The Supreme Court in the cases *supra* gave no reasons for its ruling. It is probable that the reason was, that the naming of the deponent in the body of the affidavit was thought as practically effectual to identify him as his signature at the foot of the paper. If that be the reason, then the need of signature, or naming in the body, is but for identification ; and as signature is as effectual or more so than thus to name, it is a legitimate deduction from these cases that signature to an affidavit, though there be no naming of deponent in the body of it, will save it from condemnation.

It is claimed that, by reason of this omission, the paper is not an affidavit and was not evidence to the officer of the matter declared in it to be fact. It does, however, come within the definition from Bacon's Abridgement (*supra*). No decision has been cited to us, nor have we been able, with some pain in search, to find one, that holds that such a paper is not to be taken in evidence, in cases where the written statement of a witness may be used instead of his presence and oral examination. It has been held, when the affidavit, to be effectual, must be made by one having a certain character or personal capacity, wherein he acted or is to act in doing the matters averred therein, that the paper ought to state that the deponent has that character or capacity. (*Ex parte Bank of Monroe*, 7 Hill, 177 ; *Ex parte Shumway*, 4 Den. 258 ; *Staples* v. *Fairchild*,

3 N. Y. 41.) In such case it is manifest that the name of the deponent must be stated, to apply to him by that name the statement of his capacity. These cases do not come up to holding that to make an affidavit in general effectual, the name of the deponent must appear in the body of the paper. We are obliged to pass upon the question as reason bids us. We have stated above what should be required in such a paper. Did this paper show to the officer that some person's conscience had been burdened with an oath? We think that it did. We think that the paper purported to be on the oath of the person whose name appeared signed to it. Then the paper offered to the city judge its statement of facts, as averred under the sanction and obligation of that oath. The paper, by the signature it bore, identified the person of the deponent. The *jurat* was ample; it declared that the subscription was made before the officer, and that could mean nothing other than the making of the signature of the name borne upon the paper; it declared that it was sworn to as well as subscribed before the officer, and that could mean nothing other than it was sworn to by the person who made that signature. It seems that the following must be test enough of the legal sufficiency of the paper. Would an indictment for perjury lie upon the paper against the person who signed and swore to it, if it was willfully false? In our judgment, an officer could receive and give credence to any paper upon which an indictment for perjury would lie and be maintained. (*Watson* v. *Walker*, 1 M. & Scott, 437; *S. C.*, 8 Bing. 315.) He could, where no question was made, take as genuine signatures, the name signed where a deponent would sign his, and the name signed where the oath-putting officer would sign his. Those signatures being genuine, if the statements in the writing were willfully false, an indictment for perjury would lie; and the proof could be made that would convict. In an indictment for perjury in an answer in Chancery, the mode of proving that the defendant was sworn is to bring in the original answer signed by him, to prove the genuineness of his signature to it, of that of the officer to the *jurat*, and to show the identity of the defendant. (*Rex* v. *Morris*, 1

Leach, 50; *S. C.*, 2 Burr. 1189; *Rex* v. *Benson*, 2 Camp. 508.)
In an indictment for perjury in an affidavit, the proof is after
the same mode. (*Reg.* v. *Hudson*, 1 Foster & Finlayson, 56;
*Reg.* v. *Turner*, 2 C. & Kir. 735.)   There was then enough in
this written paper to have founded and sustained an indictment
for perjury had it been false, with such mode of proof as we
have shown to be accepted.

What more is there to legal evidence, in any case where it is
taken, relied on and acted upon by courts, than that it is ren-
dered in such form and under such sanctions as that the wit-
ness takes on responsibilities and incurs liability to the crimi-
nal law if he utters willful falsehood ?   An affidavit is instead
of the presence of the person who makes it, and of his testi-
mony given orally.   If the written paper has that in or about
it which identifies him as the witness as well as does his pres-
ence, and which furnishes proof of his having uttered the mat-
ter of it under oath, as well as does his kissing the book and
speaking in the witness-box, it is formally as sufficient for
evidence as his oral testimony to the same matter.   Now here
let us say, that we do not commend the ease of official action
which either does not espy the absence of the name of the de-
ponent from the body of the affidavit; or which, espying it,
does not demand that the paper be made perfect in form.
There should be the greatest caution in receiving such papers.
The question here, however, is not what would have been pru-
dential, but what was so defective as to create fatal irregularity.
Lord DENMAN, Ch. J., said: "The courts are quite right in
not receiving affidavits which are not properly entitled; but I
do not think the question whether there be perjury or not de-
pends upon the rule as to entitling being strictly complied
with." (*Reg.* v. *Hudson*, *supra.*)

*Second.* There are other objections made to the statement
of the affidavit as insufficient.

1st. The affidavit avers that the deponent "served a printed
notice, of which the following is a true copy."   It is said in
objection that there is no notice following the affidavit.   But
there does, in the printed appeal book, a notice follow the affi-

davit, as well as one precede it. It may not have been so in the written return of the city judge. We are not able, from what is shown to us, to say that the affidavit is defective in this regard; the more especially as in another part of the printed book there is a printer's blunder, by the transposition of matter, and the thrusting it into the page so as to break off the sequence of statement.

2d. The affidavit then avers that the printed notice was served " on each of the following named persons, on the days and in the manner next herein specified, that is to say; " then immediately follows a list of names of persons under the heading of "Names of Creditors," and in a column parallel with the list, and on the same line with each name a statement of the city or town of residence, save in one ·instance where the word "unknown " is found. Immediately after that list is the averment: " By depositing 1860, April 9th, in the post-office in the city of Brooklyn, a letter envelope, directed to each of the foregoing creditors at the place of residence hereinbefore designated, and in each envelope was a printed notice of which the following is a true copy, and on each envelope so directed, was placed a post-office stamp to pay the legal postage of each letter to its place of destination." This averment is the subject of the criticism of the respondent; some of it more fine than sound. The plainly intelligible meaning of the affidavit is that the service, whatever it was, was made on the 9th day of April, 1860. That is not the next thing specified, but it is the day next specified after the prior reference to any day. The manner of the service was by depositing something in the post-office in the city of Brooklyn. It was a letter envelope. This alone would indicate but one such envelope. But it is saved from that meaning by the further averment, that in each envelope was a printed notice, taken in connection with the averment of direction (meaning "address," as of a letter; see Worc. Dict.), to each of the creditors; and with the averment that on each envelope so directed was placed a post-office stamp. The affidavit, as a whole, fairly avers the putting as many printed notices as there were creditors named in the affidavit into en-

velopes, one notice in each envelope, one of which envelopes was directed to each creditor; and it would be evidence of those facts.

3d. Most of the creditors are stated in the affidavit to have had their residence in New York city. No number of street, or street itself, is named as the place of residence. The envelopes were directed for those creditors to New York city generally. It is claimed that was not a sufficient address. It was indeed inapt, if the letter was expected to reach the creditor. But our inquiry is, was the law so disregarded as to vitiate the proceedings of the judge? The Revised Statutes provided for notice to creditors by publication. (2 R. S., p. 18, §§ 10, 11.) The act of 1847 was for an additional notice. It provided that where the residence of the creditors was known to the insolvent, the officer must direct notice to be served on them at their known and usual place of residence. The requirement to give that notice is dependent upon the place of residence being known to the insolvent. As that is a prerequisite, it is to be assumed that direction so to serve would not be given unless the officer had first found that the insolvent had knowledge of the place of residence; and as in this case the officer did make the order so to serve, it is to be taken that he did find on inquiry made that the insolvent knew of the place of residence of some of his creditors. We say some, for the order is in that form, that notice be served on those whose place of residence was known to the insolvent. It appears that the place of residence of nearly all was, in a general sense, known to him.

We perceive that the law does not require that notice be served, unless the place of residence of the creditor be known. It permits the service to be by letter. Service by letter can be no more perfect as to the address of the latter, than the knowledge of the insolvent will enable. Can we say that the insolvent did not to the best of his knowledge serve these notices, by addressing them to New York city generally? There is nothing in the case that shows that it appeared otherwise to the officer. Can we say that it was not proof that the

officer might legally be satisfied with, when it appeared that the letters were sent generally to New York city, and it did not also appear that the insolvent had knowledge of the more exact locality of the residence of his New York city creditors respectively? As to those residing in other cities than New York, it is too much to say that a general address was not sufficient for the law.

4th. The affidavit avers that on each envelope was placed a post-office stamp to pay the legal postage of each letter to its place of destination. It is said that "a post-office stamp" is not "a postage stamp." It would be hypercritical to say that the meaning here is not of a stamp such as at the post-office was of the kind used to pre-pay postage. It is said that the averment does not show that the stamp was of such value as would suffice to pre-pay the postage to the destination of the letter as shown by the address. The statement is not as definite as a careful draftsman would make it. We think, though, that the meaning conveyed, and the meaning for which the deponent would be responsible, is that the stamp put on was in value enough to pay the legal postage for each letter according to its address.

5th. It is said that the name of Charles Storrs, the assignor of the respondent, and who was a creditor of the appellant, was entirely omitted from the list of creditors. As spelled above, it was not there. As spelled Stores, it was there; and that is a case of *idem sonans*. It sounds alike, and that is enough. (*Webb* v. *Lawrence*, 1 Cr. & Meeson, 806.) And besides, he is further designated as the assignee of a firm.

*Third.* It is further claimed that the record does not show that two-thirds of the creditors joined in the primary petition. It does appear from the papers that two-thirds of the creditors signed the petition who claimed to represent $41,302.03 of debts. The whole amount of debts was shown at $60,747.34. The debts of the petitioning creditors were more than two-thirds by $894.61. The objection is made to rest more especially on the fact that for $11,692.12 the liability of the insolvent was as an indorser. It appears, however, in the

schedule of debts that the notes indorsed had severally been protested for non-payment, and that the insolvent had become liable thereon. Moreover the effect of the notice of discharge is to exonerate the insolvent from all liability incurred by indorsing any promissory note or bill of exchange upon the execution of his assignment. (2 R. S. p. 22, § 31.)

We think that the affidavits of the petitioning creditors, and the schedules to the petition, sufficiently set forth the nature of their demands and the general ground and consideration of the indebtedness.

We have thus gone through the points of the respondent, wherein he alleges defects in the proceedings before the city judge. While we perceive that those proceedings were not so exact and so carefully conducted as in a transaction of such importance they should always be, we do not find in them that defect that is vital.

The judgments of the Special and General Term should be reversed, and judgment should be given for the appellant.

All concur.

Judgment accordingly.