(3 Misc. Rep. 365.)

FLANAGAN v. FOX.

(City Court of New York, General Term. April 14, 1893.)

1. VENDOR AND PURCHASER—TITLE—APPROVAL BY THIRD PERSON.
    Under a contract by defendant to convey land to plaintiff, providing that defendant should give, and plaintiff should accept, such title as a designated title guaranty company should approve, the mere fact that the company would not and did not approve the title is not such a breach of the contract as would entitle plaintiff to damages, but defendant may show that the title was in fact good and marketable.

2. SAME—TENDER OF PURCHASE MONEY.
    It is a further bar to such recovery that plaintiff had never made tender of that part of the purchase price agreed to be paid on delivery of the deed; it being necessary, in order to put defendant in default, that he make tender, and demand the deed provided for by the contract.

Appeal from trial term.

Action by James Flanagan, as executor of Catharine Flanagan, against Patrick Fox, to recover damages for an alleged breach of contract. From a judgment entered on a verdict in favor of plain-

tiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before McGOWN and FITZSIMONS, JJ.

Philip O'Sullivan, (John W. Konvalinka, of counsel,) for appellant.

J. Baldwin Hand, for respondent.

McGOWN, J. The plaintiff seeks to recover damages for a breach of contract on the part of the defendant. On the ——— day of June, 1892, the above-named defendant, as vendor, entered into a contract in writing (plaintiff's Exhibit A) with Catharine Flanagan, (now deceased,) as vendee, in and by which the defendant agreed to sell to the said Catharine Flanagan a lot of land in the city of New York for the sum of $6,000, $500 to be paid on the signing of the contract, (which was then paid,) $3,500 on delivery of the deed, and the remaining sum of $2,000 by the execution of a purchase-money mortgage by the said Catharine Flanagan; the defendant to deliver a full covenant warranty deed, properly executed and acknowledged, for the conveying and assuring to the said Catharine Flanagan the absolute fee of said premises, free and clear of all incumbrances, etc. "The vendor shall give, and the vendee shall accept, a title such as the title guaranty and trust company will approve," the deed to be delivered at the office of the said company on or before July 15, 1892; the stipulation in the contract to apply to and bind the heirs, executors, administrators, and assigns of the respective parties. The contract was executed by the said defendant and by the said Catharine Flanagan. The plaintiff herein and the defendant met at the office of the company on the 15th day of July, the day named in the contract as the time for the performance. The said company had not completed its examination, and, some objections having been raised to the defendant's title, by mutual agreement the time for the performance of the contract was extended to the following Tuesday, at which time the title company declined to approve of the title, and the contract was not carried out. The said company claimed of the plaintiff the sum of $80 for its services in examining the title, and the plaintiff paid it (the company) $40 in settlement of the claim. Plaintiff thereupon commenced this action to recover the said sum of $500 paid on the execution of the contract, the sum of $40 paid to the company for examining the title, and the further sum of $50, alleged to have been paid to his attorney herein for examining the title. The parties hereto testified, in substance, to their being ready and willing to perform the contract, while it appears from the evidence herein that the defendant did not tender to the plaintiff a deed properly executed and acknowledged, and that the plaintiff did not tender to the defendant the sum of $3,500, the second payment on the contract.

By reference to the statements made by the counsel for the plaintiff during the course of the trial, and to the rulings of the

trial justice in excluding testimony offered by the defendant, and to his charge to the jury, it clearly appears, we think, that the case was tried and disposed of upon the erroneous theory that, in order to recover, it was only necessary for him to prove that the said title company did not and would not approve the defendant's title. It appears from the testimony of the witness John H. Post, a representative of the said company, that the company did not approve of the title, and on cross-examination by defendant's counsel was handed a paper, and the witness asked:

"Question. Look and see if that is a report you made to Mr. Fox of the objections of the title company to that title. Answer. I recognize that as a memorandum prepared in the office. I am not able to say that it was handed to Mr. Fox. I don't know. Q. Are the objections set forth in that paper the objections that the title company had to that title? (Plaintiff's counsel objects as irrelevant, immaterial, and incompetent.) The Court, (to plaintiff's counsel:) Do I understand you that the basis upon which you claim is that it does not make any difference whether there was a good or bad title, so long as they do not deliver a deed guarantied by the company? Plaintiff's Counsel: Yes, sir. The Court: Excluded on that statement. (Defendant excepts.)"

Upon the examination of the defendant by his counsel the defendant was handed the same paper, which he stated was a memorandum of the objections which he got from the said company some time in July, and which was then offered in evidence by defendant's counsel.

"The Court: Is it your contention that the word 'approve' means 'guaranty?' Plaintiff's Counsel: No, sir; that is not my 'contention.' (Received in evidence, and marked 'Defendant's Exhibit 1.' Plaintiff's counsel excepts.)"

And after further direct examination of the defendant:

"The Court: I reverse the ruling as to this paper marked 'Defendant's Exhibit 1,' sustain the objections of plaintiff's counsel, and exclude the paper. (Defendant excepts. Paper referred to marked for identification '1.') Defendant's Counsel: Now, I will make an offer to prove that the title to this property is absolutely good, and that it is a marketable title, and that there is no claim, force, or foundation in the objections raised by the title guaranty and trust company. Plaintiff's counsel: I object to the evidence being put in. The Court: Do you object to the offer? Plaintiff's Counsel: No, sir. (Objection sustained. Defendant excepts.)"

We think it was error on the part of the trial justice in excluding evidence as to what the real objections were, if any, the company had, for not approving the title. Had such evidence been admitted, the defendant would have had the right to introduce evidence to show that there was no force or merit in the objections; that the action of the company in refusing to approve the title was arbitrary, and unwarranted by the facts; and that the objections were not good or legal. The contract between the parties (plaintiff's Exhibit A) did not require that the company should guaranty or insure, but only that it should approve, the title. Before the plaintiff could recover, it was necessary for him to show ability and readiness to perform on his part. He testifies at folio 58: "I have $3,500 in this pocketbook, [referring to July 15th.] I have money with me to pay you if this thing is all right." It does not appear that he either exhibited or tendered that

amount to the defendant. In order to bring the defendant in default, the plaintiff should have made a legal tender of the amount to the defendant, and demanded a deed such as the contract called for. It was the duty of the defendant to tender to plaintiff such a deed as the contract called for. The plaintiff testified that defendant had never tendered a deed. Defendant was not allowed to prove his readiness to comply with the contract, and was asked by his counsel:

"Question. Please look at the papers I now hand you, and state what they are. Plaintiff's Counsel: I object to his stating what they are. (Objection sustained. Defendant excepts.) Q. Well, please look at this paper. Were you or were you not ready to deliver this paper, properly executed, at the time of closing of that title? (Plaintiff's counsel objects. Objection sustained. Defendant excepts.)"

The trial justice, as before stated, evidently held that, to entitle the plaintiff to a verdict, it was only necessary for him to show that the title company did not and would not approve defendant's title; as in his charge to the jury he said: "* * * Charge you that the plaintiff is entitled to recover the sum of $500 and interest. * * * Now, you must find a verdict for the plaintiff for $500, and interest from the 10th day of June, 1892. It is for you to say upon the evidence whether the plaintiff incurred reasonably the expense of the searching of the title of $40, and whether he paid the title guaranty and trust company that sum,"—thus virtually directing the jury to find a verdict for the plaintiff for at least the sum of $500 and interest, the amount paid on executing the contract,—to which charge defendant excepted. The title guaranty company was employed by the plaintiff to search the title of defendant, and it was his agent for that purpose, and he paid the company for its services. The contract provided for the delivery to defendant of "a full covenant warranty deed, properly executed and acknowledged for the conveying and assuring to the vendee * * * the absolute fee of said premises, free and clear of all incumbrances." The contract further provides that the vendor "shall give, and the vendee shall accept, a title such as the title guaranty and trust company will approve." It cannot be successfully claimed that by the force of this provision the plaintiff can lawfully demand that the defendant do more than by the previous terms of the contract he is bound to do. There is nothing left by the contract indefinite or uncertain as to what defendant should do. The stipulation that the title was to be approved by the title company is not to be a capricious one, or to be arbitrary. The defendant had a right to know what the objections were to his title, and a right to show that such objections were untenable, and that there was no merit therein. If defendant's title to the property is good and marketable, that is all the plaintiff was entitled to, (see Vought v. Williams, 120 N. Y. 253, 24 N. E. Rep. 195,) and all that the defendant was bound to give; and neither the plaintiff nor the title company can demand more than a performance in fact to the limit of their legal requirements of the covenant contained in the contract. The reservation to the plain-

tiff that the title was to be approved by the title company is no more, in effect, than that it shall be to the satisfaction of the company, that the requirements of the contract should be fulfilled. Such satisfaction is not an arbitrary or capricious one. It has its measure by which it can be fulfilled,—that which the law should say a contracting party ought in reason to be satisfied with; that the law will say he is satisfied with. See City of Brooklyn v. Brooklyn City R. Co., 47 N. Y. 475. In Folliard v. Wallace, 2 Johns. 395, there was an agreement to pay three months after one should be well satisfied that the title was good. The court, per Kent, C. J., said:

"Nor will it do for the defendant to say that he is not satisfied with his title, without showing some lawful incumbrance or claim against it. A simple allegation or dissatisfaction, without some good reason assigned for it, might be a mere pretext, and cannot be regarded. If the defendant were at liberty to judge for himself when he was satisfied, it would totally destroy the obligation, and the agreement would be absolutely void. * * *"

The law in this case will determine for the defendant when he ought to be satisfied. There is, as before stated, no proof in the plaintiff's case of any performance on the part of the plaintiff, no proof of failure on the part of the defendant, and the only attempt of any proof to show a cause of action is simply the disapproval of the title company, without showing or specifying any reason or defect impairing the marketability of defendant's title. No reasons are given or shown by the plaintiff in this case why the title was not approved, or why the title was not perfect, or wherein it was defective, or for what reason, or on what grounds, the title company refused to approve the same. See Thomas v. Fleury, 26 N. Y. 33; Bowery Nat. Bank v. Mayor, etc., 63 N. Y. 336; Miesell v. Insurance Co., 76 N. Y. 115; Boiler Co. v. Garden, 101 N. Y. 387, 4 N. E. Rep. 749; Doll v. Noble, 116 N. Y. 230, 22 N. E. Rep. 406. The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

