PROVIDENCE.

MICHAEL HANNA vs. DANIEL L. D. GRANGER, City Treasurer of the City of Providence.

Neither the fact that an injured employee and the one causing the injury are engaged in separate departments of the business of a common employer, nor the fact that the employees are of different grades, the superior having the right of direction over the inferior, constitutes an exception to the general rule that a master, using due care in the selection of servants, and furnishing suitable appliances, is not liable to one of them for an injury received in his service by the carelessness of a fellow servant.

A servant acting as a vice principal is not a fellow servant with the other employees.

A vice principal is one who stands in the place of the master with reference to the master's duties, and the latter is responsible only for such acts of negligence as are violations of those duties. The test of the master's liability in such cases is not the rank of the negligent servant, nor his power to hire and discharge help, but the character of the negligence from which the injury results.

A flagman to a steam roller used in repairing streets, who was subject to the orders of the engineer of the roller, and liable to discharge by him, both being in the employ of a municipal corporation, was injured in the course of their common employment through the carelessness of the engineer in suddenly, and without warning, starting the roller with great noise so that a span of horses became frightened and ran upon and injured the flagman.

Held, that the flagman and the engineer were fellow servants, and that the municipality was not liable for the injury.

PLAINTIFF'S petition for a new trial.

March 14, 1894. STINESS, J. The declaration in this case states, (1) that the plaintiff was in the employ of the city of Providence as flagman to a steam roller used in repairing streets; (2) that he was subject to the orders of the engineer of said roller, also in the employ of the city, and liable to discharge by him; (3) that while so employed the engineer carelessly and suddenly started the roller, without warning to the plaintiff, with great noise, frightening a span of horses used by said city so that they ran into and injured the plaintiff.

These allegations, on demurrer, raise very pointedly the application of what is called the fellow servant rule. The plaintiff concedes that this rule is applicable to municipal

corporations and we can see no reason why it should not be. Indeed, there is stronger reason for including municipal corporations within its protection than there is for including private business corporations. It has been so applied. *Flynn* v. *Salem*, 134 Mass. 351. In *Turner* v. *Indianapolis*, 96 Ind. 51, there is a *dictum* to the contrary, but it is evidently based upon the independence of the fire and street departments, as public officers, and cannot be regarded as a general statement. In *Coots* v. *Detroit*, 75 Mich. 628, the fellow servant rule was held not to apply, upon the grounds that a fireman has the rights of a traveller in the streets, independently of his employment by the city, and hence an injury caused by a defective street is not one of the risks incident to his employment. The principle of these cases is not inconsistent with an application of the rule to cases like this one. The rule here invoked is, that a master, using due care in the selection of servants and furnishing suitable appliances, is not answerable to one of them for an injury received in his service by the carelessness of a fellow servant. No one will deny that this is established law, outside of statutory provisions, notwithstanding the limitations, exceptions and refinements to be found in the multitude of cases where sympathy has misguided judgment. The rule is plain and simple. It marks out a clear boundary of duty and liability. It requires of the master care in selecting servants and providing appliances for the work; it leaves to the servant the risk of accident from the negligence of his fellows against which a master could not take precaution. The cases which have sought to engraft limitations upon the rule have been too numerous for citation, but they fall into classes, which may be more conveniently considered. One class holds that a laborer in one department is not a fellow servant with a laborer in another and separate department. This distinction is recognized in Georgia, Kentucky, Tennessee and Illinois. 7 Amer. & Eng. Encyc. Law, 842, and cases cited. It rests upon the fanciful assumption that those engaged in the same department can influence each other to caution, and report delinquencies, while those engaged in different

departments cannot do so and hence should not be regarded
as within the reason of the rule of fellow·servants. This
doctrine has been examined and disapproved in this State, in
*Brodeur* v. *Valley Falls Co.*, 16 R. I. 448, and the great
weight of authority is against it. Another class of cases
holds that employees of different grades, the superior having
the right of direction over the inferior, are not fellow ser-
·vants. Numerous citations of this class may be found in
McKinney on Fellow Servants, § 43, n. 2. At the head of
the list stands *Chicago & Milwaukee Ry. Co.* v. *Ross*, 112
U. S. 377, which for the last ten years has been the principal
prop for this doctrine. But in the recent case of *Baltimore
& Ohio R. R. Co.* v. *Baugh*, 149 U. S. 368, the whole sub-
ject is most ably reviewed by Mr. Justice Brewer and the
Ross case is explained ; indeed, we may almost say that it
is explained away. He says : "The court, therefore, did
not hold that it was universally true that, when one servant
has control over another, they cease to be fellow servants
within the rule of the master's exemption from liability, but
did hold that an instruction in such general language was
not erroneous when applied to the case of a conductor having
exclusive control of a train in relation to other employees of
the company acting under him on the same train." After
calling attention to the fact that the decision in the Ross
case was not reached by a unanimous court, four of its mem-
bers being of the opinion that it was carrying the thought of
a distinct department too far, the court in the Baugh case,
Chief Justice Fuller and Mr. Justice Field dissenting, pro-
ceed to decide that an engineer and fireman, running alone
on a railroad, without a train attached, are fellow servants,
and the fireman is precluded from recovering for injuries
caused by the negligence of the engineer.

At the close of the section cited above, Mr. McKinney
says : "On the other hand the entire doctrine of the liabil-
ity of the master for a superior's tort to an inferior, is une-
quivocally repudiated by courts whose number and authority
(saving the United States Supreme Court) outweigh that of
those favoring the doctrine." In view of the Baugh case it

would seem that the "saving" clause may now be omitted. In *Mann* v. *Oriental Print Works*, 11 R. I. 152, it is recognized that mere difference of grade is not sufficient to affect the rule relating to fellow servants, if the fact of superiority is not an element in causing the injury.

Another limitation, and that which is most strongly pressed in this case, is that of a servant acting as a vice principal and so not a fellow servant with other employees. This is a sound and necessary limitation. It is self explanatory. When a master commits his duty to another person, whether a servant or not, such person stands in the place of the master; he is a vice principal with reference to that duty and the master is responsible for his act as such. Simple as this rule is there has been much confusion in its application. Thus, beginning with *Little Miami R. R. Co.* v. *Stevens*, 20 Ohio 415, it has been held that every superior servant is a vice principal as to those under him. In some cases this is mere dictum, e. g. *Cowles* v. *Richmond & Danville R. R. Co.*, 84 N. C. 309, where the jury expressly found that the injury occurred because the company provided defective cars. This is a somewhat amusing case because it is frequently quoted in support of this "superior servant" notion. The court says that the purpose of counsel was to bring the case within the rule of fellow servants, "so much discussed of late by elementary writers," and hence he should have been more careful to show whether the two servants were fellow servants or whether one was superior to the other. Nevertheless, the court goes on to announce the law just the same as though these facts had appeared, and then says it will not rest its decision on that point but on the correctness of the verdict of the jury. Under such a rule the liability of a master for negligence would run through every grade of workmen in his employ down to the very lowest. For the negligence of this class only would he be exempt. It is simply another phase of the "superior servant" idea, which, as we have seen, is neither accepted as law in this state nor in the country at large.

Other cases have held that the power to hire and discharge

help makes one a vice principal. For example, it is said in
*Patton* v. *Western N. C. R. R. Co.*, 96 N. C. 455, that
where a laborer, who simply by the nature of his employ-
ment would have no authority to bind or represent his prin-
cipal, in any respect, has power to employ other like laborers,
to direct them when, where and how to work, to control and
superintend them and discharge them in his discretion, al-
though he should labor with and as one of them, the master
is liable for his negligence in the course of his employment.
But over against this case should be put that of *Webb* v.
*Richmond & Danville R. R. Co.*, 97 N. C. 387, where it was
held that authority to discharge a fellow servant does not of
itself make one a vice principal. Undoubtedly, the power to
hire and discharge is the test of a vice principal when the
question involved is that of selecting or retaining proper ser-
vants; for in this respect the servant would clearly represent
the master. But in no other sense is it a test. The power
to summarily discharge unworthy servants and to hire
new ones is often a very necessary and beneficial power for
the safety of other servants, for it gives a foreman authority
to compel attention to duty. But it does not change the
character of the foreman's duties from that of a servant to
those of the principal, nor does it impose upon him the
master's responsibility in other respects. And this brings us
to the true statement of the rule as we understand it, which
is that a servant is a vice principal only when he stands in
place of the principal with reference to the principal's duty,
or in the exercise of the principal's functions. Any thing
beyond ·this is inconsistent with the well settled rule of the
master's duty. It adds to and alters it in ways that cannot
be foreseen nor guarded against, and makes a master liable,
however great may have been his care and diligence in select-
ing his servants. But it may be said that the converse makes
the servant suffer. So it may. Accidents are continually
happening from somebody's carelessness. The law gives a
remedy in damages against the guilty party, but not against
an innocent one. As to strangers, upon principles of public
policy, it treats a master as guilty for the negligence of his

servant, but public policy does not demand that he should be so treated as to his own servants, who have the option to examine their surroundings in his service and to receive pay according to the risk they incur. They may sue a fellow servant for his negligence, but to make the master liable for it, unless that servant is taking the place of the master, is contrary to reason and justice. The doctrine is very pithily stated in *Ell* v. *Northern Pacific R. R. Co.*, 1 N: Dak. 336. "Those cases which preserve the fellow servant rule in its full integrity, bring the facts of each case to the test, not of the rank of the negligent servant, but of the character of the negligence from which damage results. Did the master owe to his servant a duty as master? Answer the inquiry in the affirmative, and he cannot escape a careless discharge of that duty by shifting the burden to the shoulders of a servant, however inferior his position may be. It is the negligence of the master himself, because that was carelessly done which he was bound to have carefully performed." See, also, *Crispin* v. *Babbitt*, 81 N. Y. 16; *Lindrall* v. *Woods*, 41 Minn. 212; *Davis* v. *Central Vermont R. R. Co.*, 55 Vt. 84; *McDermott* v. *Boston*, 133 Mass. 349; *Flynn* v. *Salem*, 134 Mass. 351; *Doughty* v. *Penobscot Log Driving Co.*, 76 Me. 143; *Indiana Car Co.* v. *Parker*, 100 Ind. 181; *Hussey* v. *Coger*, 112 N. Y. 614; *Yates* v. *McCullough Iron Co.*, 69 Md. 370; 7 Amer. & Eng. Encyc. Law, 838, *et seq.* Applying the rule that the character of the act is the criterion of fellow service, the demurrer in this case must be sustained. The act set forth in the declaration is the careless starting of the engine. This is the act of a servant and not the duty of a principal. The negligence alleged pertains to the duty of a servant and not the duty of a principal. This is not a question of fact, because the law defines and limits the duty of a principal, and the declaration does not state a case which shows a breach of that duty.

The demurrer was rightly sustained in the court below, and the petition for a new trial is denied.

*Cassius L. Kneeland*, for plaintiff.

*Francis Colwell*, City Solicitor, for defendant.