JAMES T. VOUGHT et al., Appellants, *v.* JOSEPH S. WILLIAMS, Respondent.

A contract for the purchase of real estate provided that the title should be "first class," to be passed upon by a lawyer or conveyancer desig-nated by the purchaser. In an action for the specific performance of the contract, *held*, that the stipulation, that the title should be "first class" meant simply that it should be marketable; and that the pro-vision that the title should be passed upon by defendant's lawyer or conveyancer, did not make his decision that the title was good a con-dition precedent to the plaintiffs' right to enforce performance of the contract.

It appeared that the premises in question belonged to one R., who died intestate in 1853, leaving a widow and two sons, W. and G. The latter in 1863, when about twenty-two years of age, being unmarried, in poor health, dissipated and not in business, disappeared and has not been heard of since. In April, 1875, his mother and brother conveyed the property to plaintiffs' grantors by a deed which recited that they were the sole heirs at law of R. *Held*, that the title was not marketable and defendant could not be compelled to complete his purchase.

Every purchaser of real estate is entitled to a marketable title free from incumbrances and defects unless he expressly stipulates to accept a defective title.

A marketable title is one free from reasonable doubt. Such doubt exists when there is uncertainty as to some fact appearing in the course of its deduction, which affects the value of the land or will interfere with its sale.

*Ferry* v. *Sampson* (112 N. Y. 415), distinguished and limited.

Reported below, 46 Hun, 638.

(Argued March 20, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 4, 1887, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The action was for the specific performance of a contract to purchase real estate.

In March, 1853, Giles B. Richardson died intestate, seized of the property in question, leaving surviving him his widow

Mary P. Richardson, and two sons, William H. and Giles B., Jr. Giles B., Jr., was born on May 16, 1840, and lived with his mother at Pittsford, Monroe county, until 1863. At that time he was unmarried, and was in poor health, was very dissipated and had no business. In May, 1863, he left home, and about a week thereafter was seen by an acquaintance in the city of Albany. He was then in a destitute condition and in want of clothing and stated that he was going to Troy to procure work. From that time until the trial of the action he had not been seen, and none of his friends or members of his family had ever heard anything of him.

In April, 1875, his mother and brother by deed conveyed the property in question to the plaintiffs' grantors. The deed recited that the grantors were the sole heirs at law of Giles B. Richardson, deceased, and that it was intended to vest the absolute title to said lands in the party of the second part; that the deed was executed upon the assumption that Giles B. Richardson, Jr., was actually dead.

The contract between the parties to this action for the sale of the land provided that the title was to be "first class" and was to be passed upon by a lawyer or conveyancer to be designated by the defendant.

The defendant refused to take the property on the ground that the title was not a marketable one.

Further facts appear in the opinion.

*James B. Perkins* for appellants. If any explanation was needed as to any portions of the search of the plaintiffs' property, it could be furnished at the time of the trial, and it was supplied by the evidence. (Pom. on Cont. §§ 376, 421.) There is no question as to the lines of the lot. (*Bolin* v. *Fay*, 4 N. Y. S. R. 94.) The fact that Mr. Yeoman advised his client not to take the title is of no importance. (*D. B. Co.* v. *Gardner*, 101 N. Y. 387; *Hamilton* v. *Buckmaster*, L. R. [3 Eq.] 323; *Falliard* v. *Wallace*, 2 Johns. 395; *Hudson* v. *Buck*, L. R. [7 Ch. Div.] 683.) The court erred in finding that the title was not merchantable on account of the dis-

appearance of Giles B. Richardson. (Code, § 841; Lawson on Pres. Ev. 200, 205; Phillips on Ev. 238, 239; *Fleming* v. *Burnham*, 100 N. Y. 1; *Hillery* v. *Waller*, 12 Ves. 239; *Emery* v. *Grodock*, 6 Mad. 54; *Prosser* v. *Watts*, Id. 59; *Dixon* v. *Dixon*, 3 Brown Ch. 510; *Lyddal* v. *Weston*, 2 Atk. 20; *Ten Brock* v. *Livingston*, 1 Johns. Ch. 357, 362; *Gerry* v. *Post*, 13 How. Pr. 118; *Ottinger* v. *Strasburgh*, 33 Hun, 466; *In re Trustees, etc.*, 31 N. Y. 574; *B. Park* v. *Armstrong*, 45 id. 234, 248; *Stopylton* v. *Scott*, 16 Ves. 274; *Kip* v. *Hirsh*, 103 N. Y. 565; *Ferry* v. *Sampson*, 112 id. 415.)

*George F. Yeoman* for respondent. The decision of the defendant's attorneys that the title was not good is a bar to this action whether the attorneys were right or wrong as to the fact. (*Hudson* v. *Buck*, L. R. [7 Ch. Div.] 683; *Williams* v. *Edward*, 2 Sim. 78; 101 N. Y. 389; *Grey* v. *C. R. R. Co.*, 11 Hun, 70; 18 Abb. [N. C.] 48; *McCormick* v. *Chesbrown*, 31 Alb. L. J. 357; *Singely* v. *Wager*, 33 id. 82; *McClure* v. *Briggs*, Id. 223; *E., etc., Co.* v. *C., etc., R. R. Co.*, 34 id. 77.) Without any stipulation in the contract, the title must be shown by the plaintiffs to be marketable, in order to compel the purchaser to take it. (*Hinkley* v. *Smith*, 51 N. Y. 21; *Shultz* v. *Rose*, 65 How. Pr. 79; *Wilson* v. *Holden*, 16 Abb. Pr. 133; *Delevan* v. *Duncan*, 49 N. Y. 486, 487; *Bigler* v. *Morgan*, 77 id. 312, 319, 320; Leake on Cont. 828, 829; *Cooper* v. *Emory*, 1 Phillips, 388.) The title was not marketable. (*Hinkley* v. *Smith*, 51 N. Y. 21; *Fleming* v. *Burnham*, 100 id. 8–12; *Shultz* v. *Rose*, 65 How. Pr. 75; *Moore* v. *Williams*, 115 N. Y. 592; Sudgen on Vendors [13th ed.], 14; Rawle on Cov. 430; *Burwell* v. *Jackson*, 9 N. Y. 535; *Delevan* v. *Duncan*, 49 id. 485; *Stapleton* v. *Scott*, 16 Ves. 271, 274; *Lowes* v. *Lusk*, 14 id. 538.) A presumption from the lapse of time will not arise in support of a title as against a purchaser. (*Schriver* v. *Schriver*, 86 N. Y. 584, 585; Atkinson on Tit. 419, 420; *Wood* v. *Squires*, 1 Hun, 481, 483; *Morey* v. *F. L. & T. Co.*, 14 N. Y. 308, 309; Pomeroy on Cont. § 205.) The facts are not sufficient to create a pre-

sumption of the death of Giles B. Richardson, even in a case where such a presumption would apply. (Lawson on Pres. Ev. 53; Whart. on Ev. [3d ed.] § 1285.) The statutory presumption does not apply, except as against the owner of a life estate. (Code, § 941; 13 How. Pr. 120; 1 Abb. Pr. 223; 1 Barb. Ch. 462.) The suspicion which is thrown upon the title by the recitals in the deed from the widow and William, is sufficient to prevent a decree for specific performance. (*Stapleton* v. *Scott*, 16 Ves. 271, 274). It follows from the fact that the plaintiffs cannot perform the contract that the defendant is entitled to recover the part payment. (50 N. Y. 38, 43; 65 How. Pr. 78, 79; L. R. [7 Ch. Div.] 683; 77 N. Y. 318; 108 id. 237, 618; 115 id. 586; 28 N. Y. S. R. 687.) The belief of people is immaterial, even if it is a competent kind of evidence, for it only tends to establish a probability. The issue the plaintiff was bound to establish was that Richardson was in fact dead. The evidence must produce that conviction in the mind of the judge. We submit that there is no precedent for such evidence, and that it is obviously improper. (Stephens on Ev. art. 31.) The question of death is not one of pedigree, and the belief of the family as to it is not competent. (Stephens on Ev. art. 31; *Whittuck* v. *Walters*, 4 C. & P. 375.)

Brown, J. The provision that the title was to be passed upon by the defendant's lawyer or conveyancer did not make the decision of the conveyancer that the title was good, a condition precedent to the right of the plaintiff to enforce the performance of the contract.

If a decision to that effect was refused unreasonably, the failure to obtain it would not defeat a recovery, and it would have been unreasonably refused if, in fact, beyond all dispute the title was good. (*Folliard* v. *Wallace*, 2 Johns. 395; *Thomas* v. *Fleury*, 26 N. Y. 26; *City of Brooklyn* v. *B. C. R. R. Co.*, 47 N. Y. 475; *B. N. Bank* v. *Mayor, etc.*, 63 N. Y. 336; *D. S. B. Co.* v. *Garden*, 101 N. Y. 388; *Doll* v. *Noble*, 116 N. Y. 230.)

The stipulation that the title should be "first class" could mean nothing more than that it should be marketable.

The trial court refused to find that Giles B. Richardson, Jr., was dead, and it did find that there was no evidence "as to whether or not he was dead, except the presumption, if any, which is raised from the facts hereinbefore stated with regard to him."

It found as conclusion of law "that the title of the plaintiff to said premises depending as it does upon the disputed question of fact, is not a marketable title, and the defendant was entitled because of said defect to refuse to carry out the said contract."

It is an established principle of law that every purchaser of real estate is entitled to a marketable title free from incumbrances and defects, unless he expressly stipulates to accept a defective title. (*Burwell* v. *Jackson*, 9 N. Y. 535; *Delevan* v. *Duncan*, 49 id. 485.)

A marketable title is one that is free from reasonable doubt. There is reasonable doubt when there is uncertainty as to some fact appearing in the course of its deduction, and the doubt must be such as affects the value of the land or will interfere with its sale.　A purchaser is not to be compelled to take property the possession of which he may be compelled to defend by litigation.　He should have a title that will enable him to hold his land in peace, and, if he wishes to sell it, be reasonably sure that no flaw or doubt will arise to disturb its market value.　(*B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *Shriver* v. *Shriver*, 86 id. 575; *Hellreigel* v. *Manning*, 97 id. 56; *Fleming* v. *Burnham*, 100 id. 1; *Ferry* v. *Sampson*, 112 id. 415; *Moore* v. *Williams*, 115 id. 586; *Swaney* v. *Lyon*, 67 Penn. 436; *Dobbs* v. *Norcross*, 24 N. J. Eq. 327.)

"If a title depends upon a fact which is not capable of satisfactory proof, a purchaser cannot be compelled to take it." (*Shriver* v. *Shriver, supra*.)

It was said, however, in *Ferry* v. *Sampson* (*supra*), that "the rule is not absolute that a disputable fact not determined by the judgment, is in every case a bar to the enforcement of

the sale. It depends in some degree upon discretion. If the existence of the alleged fact which is supposed to cloud the title, is a possibility merely, or the alleged outstanding right is a very improbable and remote contingency, which, according to ordinary experience, has no probable basis, the court may compel the purchaser in such a case to complete his purchase."

In that case the decisions of the General and Special Term were reversed, and the purchaser was compelled to take the title, although one to whom the property had been devised by his father's will was not shown to be dead, or if dead that he had not left a widow or children surviving him. It was shown, however, that he had not been heard from for forty years before the trial of the action and, if living, would have been about sixty-one years of age. If the reasoning of the opinion in the case just cited is to be applied in this case, it would lead to a reversal of the judgment appealed from. In respect only to the length of time that had elapsed since the absent owner was heard from, do the cases differ.

Here, we have a young unmarried man of feeble health, and of dissipated habits, leaving home from causes unknown. When last seen he was in a destitute condition and in want of clothing, and for upwards of twenty-four years no one of his family or friends have seen or heard of him. Is it reasonable to suppose that if living he would have made no effort to obtain the property that he left behind ? The presumption of death does not depend on length of time alone. Here, as in *Ferry* v. *Sampson*, there was a valuable interest in property which, according to common experience, the owner would, if living, have probably asserted and claimed. These circumstances all point to Richardson's death, as in the case cited they indicated the death of Armstrong, the devisee.

*Ferry* v. *Sampson* is not an authority, however, for anything further than that forty years' absence under the circumstances there proven raised a presumption of death. In that respect it is like the case of *M'Comb* v. *Wright* (5 Johns. Ch. 283), where Chancellor KENT made a similiar ruling.

But I am not prepared to decide that a purchaser of real estate should be compelled to take title, when there is an outstanding right in a man who, if living, would be only forty-seven years of age, and of whose death there is no evidence, except the presumption arising from an absence from his friends of twenty-four years and his failure to communicate with them and to claim property which he left behind him upon his departure from home. It is very probable that the man is dead. The chances are very largely in favor of that conclusion. But his death is not proven and the plaintiffs' title to the real estate which necessarily depends upon his death cannot be said to be free from a reasonable doubt.

Why should we compel the purchaser to take all the risk involved in that doubt?

There is no title by adverse possession. The only act of his co-tenant hostile to his title that appears in the record before us is the deed of his mother and brother which purported to convey the whole land in April, 1875, and if there has been adverse possession it dates from the delivery of that deed. (*Culver* v. *Rhodes*, 87 N. Y. 348.)

No decision made in this action can bind Richardson or his descendants, if he left any. The cloud on the title would still remain whatever decision the court might make upon the question whether Richardson was or was not living, and the title cannot be made marketable by determining that fact in this action.

In *Fleming* v. *Burnham* (*supra*), it was said "it would be unjust to compel a purchaser to take a title the validity of which depended upon a question of fact, when the facts presented upon the application might be changed on a new inquiry or are open to opposing inferences." That statement is very applicable to this case. Richardson or some descendant of his might appear at any time and destroy all the reasoning built upon his absence and abandonment of his property.

The parties contracted with reference to a "first class title." They did not rely upon the agreement which the

law would imply to that effect. They expressly stipulated for it. The consideration to be paid for the land was based upon it. And the court should not compel the defendant to execute the contract, unless it is clear beyond a reasonable doubt that he will receive what he contracted to buy.

There must be some point of time of course when the presumption of death would arise, but we have been referred to no case in this state in which that presumption has prevailed where the absence was less than forty years.

We do not think that it should prevail in this case. The circumstances do not point unequivocally to Richardson's death, and the Special Term decided correctly in refusing to enforce the contract.

The judgment should be affirmed.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.
Judgment affirmed.