(36 App. Div. 147.)

## BROKAW v. DUFFY.

(Supreme Court, Appellate Division, First Department. January 20, 1899.)

VENDOR AND PURCHASER—MARKETABLE TITLE—LUNACY.

A purchaser had actual knowledge of a record showing that a commission to take testimony was issued by the supreme court on a petition to inquire into the sanity of the vendor's grantor, made by his niece, alleging his insanity before, when, and since he conveyed to the vendor, and that a jury's finding in support of the petitioner was set aside solely because of error in the commissioner's charge to the jury; the judge observing that the "testimony presented" by the witnesses examined on the commission "certainly is such as to make out a case, if it were to be considered alone." Further, that, under a leave reserved to apply for a new commission, an application was denied on the ground that the grantor's domicile was in Ireland, and his sanity should be determined there. The lis pendens filed in the lunacy proceeding was canceled. He was also notified by the attorneys for the niece that, on her uncle's death, they would sue to set aside his deed on the ground of his insanity, and that the purchaser would buy at his own risk. Held, that the purchaser was justified in rejecting the title as doubtful and unmarketable.

Appeal from trial term.

Action by Isaac V. Brokaw against Ellen Duffy. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

M. S. Thompson, for appellant.
Michael J. Scanlan, for respondent.

BARRETT, J. This action was brought to recover the amount paid by the plaintiff to the defendant under a contract for the purchase of a lot of land in the city of New York, together with the expenses incurred in the examination of the title. The plaintiff rejected the title upon the ground that it was not marketable. The particular point of objection was that certain proceedings in lunacy against the defendant's grantor, Bernard McKenna, constituted a cloud upon the title. The defendant is a sister of this Bernard McKenna. Upon the 22d day of May, 1884, he executed a deed to her of several parcels of land in this city, including the lot in question. The consideration was one dollar. Both grantor and grantee were then residents of Ireland. The deed itself was quite informal, and seems to have been prepared by an illiterate person. The present contract was

made in November, 1891, and the title was rejected in March, 1892. The plaintiff employed Messrs. Thompson & Koss to examine the title, and these gentlemen discovered that in July, 1885, a petition was filed in the supreme court by Mary J. McShane, a niece of Bernard McKenna, alleging his insanity and the continuous existence thereof during the preceding 10 years; also alleging that the deed to Ellen Duffy was obtained from Bernard while he was thus "insane and did not know what he was doing." Upon this petition an open commission was issued for the taking of testimony in Ireland, and a number of witnesses were there examined. The testimony of these witnesses tended to support the allegations of the petition, and to show that Bernard McKenna was insane before, at the time of, and subsequent to the execution of the deed. This testimony was filed with the inquisition, whereby a sheriff's jury found that Bernard McKenna was a lunatic and of unsound mind, and had been "in the same state of lunacy since October 26, 1891." The court, however, set aside this finding (with leave to apply for a new commission) solely upon the ground of an error in the commissioner's charge to the jury. There was no finding, or intimation even, that the verdict was unsupported by the evidence. On the contrary, the learned judge observed that "the testimony presented" by the witnesses who had been examined upon the commission "certainly is such as to make out a case, if it were to be considered alone." He then referred to the expert testimony presented upon the other side, tending to show McKenna's sanity, and he held that this expert testimony had been improperly discredited by the learned commissioner in his charge to the jury. Under the leave reserved, an application was subsequently made for a new commission, but the application was denied upon the ground that McKenna's domicile was in Ireland, and that, although he had property here, justice required that the question of his sanity should be tried where he was so domiciled. All these facts appeared of record, and were considered by Messrs. Thompson & Koss. These gentlemen thereupon made further inquiries, and learned from Mary J. McShane's attorneys, Messrs. Jeroloman & Arrowsmith, that McKenna was still living; that he was about 90 years of age; that they claimed to have undoubted evidence of his insanity; and that upon his death they would at once commence proceedings on behalf of his heirs at law to set aside the deed to Ellen Duffy on the ground that, at the time of the execution, he was a lunatic. Mr. Arrowsmith thereupon notified Mr. Koss that, if the latter's client took the title, he would do so at his own risk.

It is quite clear that, upon this state of facts, the plaintiff was entirely justified in refusing to complete his purchase. He was not bound to establish McKenna's insanity as an independent fact, with all the probative force required upon a direct issue. It sufficed that a reasonable doubt was thrown upon the validity of McKenna's deed to Ellen Duffy. The rule was clearly summed up in Vought v. Williams, 120 N. Y. 257, 24 N. E. 195, as follows: "There is reasonable doubt when there is uncertainty as to some fact appearing in the course of its deduction, and the doubt must be such as affects the value of the land or will interfere with its sale." There was, to say the

least, uncertainty here as to McKenna's sanity when he executed the deed to this defendant. A jury, upon competent evidence, had actually found that he was then insane. Was the plaintiff to take the title with this verdict and the evidence upon which it was founded staring him in the face? and, further, with the assurance of the petitioner's counsel that he meant to follow it up, promptly and vigorously, with an independent action when the occasion permitted? The learned counsel for the appellant is not far out of the way when he suggests that had he, under such circumstances, accepted this title, his own mental condition might well have been questioned. It would certainly have been the purchase of an impending lawsuit, with every indication of defeat therein for his client, the purchaser. It was well said in the case above cited that "a purchaser is not to be compelled to take property the possession of which he may be compelled to defend by litigation. He should have a title that will enable him to hold his land in peace, and, if he wishes to sell it, be reasonably sure that no flaw or doubt will arise to disturb its market value." This rule is supported by Shriver v. Shriver, 86 N. Y. 575, and Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; and it was reaffirmed in McPherson v. Schade, 149 N. Y. 16, 43 N. E. 527, and Heller v. Cohen, 154 N. Y. 306, 48 N. E. 527. The plaintiff here was not bound to take the hazard of a contest with the heirs at law of Bernard McKenna, Jordan v. Poillon, 77 N. Y. 518. The record title being upon its face good, he was, to justify its rejection, bound to give evidence rendering it probable that these heirs at law could thereafter successfully attack the deed under which he was to take. Greenblatt v. Hermann, 144 N. Y. 13, 38 N. E. 966. Andrews, C. J., observed in the latter case: "It has often been said that the purchaser is entitled to a marketable title. The title tendered need not in fact be bad in order to relieve him from his purchase, but it must either be defective in fact, or so clouded by apparent defects, either in the record or by proof outside of the record, that prudent men, knowing the facts, would hesitate to take it." The case at bar is directly within this principle. The title here was "clouded by the apparent defect" of McKenna's probable lunacy, shown, as that probability was, by proof aliunde the record sufficient to induce a prudent man to hesitate to accept it.

A point is made by the respondent with regard to the notice of lis pendens filed in the lunacy proceedings. He contends that, by the judicial cancellation of this notice, the defendant's title was perfected, and the plaintiff was then bound to take. This is a misconception. The lis pendens here had nothing to do with the defect. It neither originated nor continued the cloud. It may even be assumed that a lis pendens filed in a lunacy proceeding is without authority of law. It is the fact of McKenna's probable lunacy, of which the plaintiff had actual notice, that renders the title doubtful and unmarketable. As the purchaser here had actual notice of the facts affecting the title, the cancellation of the lis pendens was entirely immaterial.

The testimony taken in the lunacy proceedings, filed with the inquisition and made part of the records of the court, was properly admitted. Upon the question of probability, which was, as we have

seen, the crucial question, it was proper to resort to the evidence thus taken. The inquisition was clearly admissible; and so we think was the evidence upon which it was founded,—if for no other purpose, at least to show that the verdict was based upon adequate testimony and was not lightly or capriciously reached. When the entire record, including this evidence, was before the trial court, it could advisedly decide whether McKenna's lunacy was a serious and imminent probability or but a slight and remote possibility. If the latter, the title was marketable, and could not be rejected (Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387); if the former, it was unmarketable, and could properly be rejected. We think, therefore, that the learned trial court erred in dismissing the plaintiff's complaint upon the merits, and that its judgment should have been the other way. A point is also made as to the rejection of certain evidence. We think the ruling on this head of doubtful accuracy, but, in the view we have taken of the merits upon the evidence which was admitted, it will not be necessary to pass definitely upon this ruling.

The judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.