### DUNN et al. v. TRAVIS.

(Supreme Court, Appellate Division, First Department. December 31, 1900.)

1. DESCENT AND DISTRIBUTION—PRESUMPTION OF DEATH.

    Where a will distributes the residuary estate to certain legatees, and directs that, if any of them die, leaving issue, such issue shall take his share, a presumption of death without issue of one of such legatees at the time of testator's death will not be indulged from mere absence for 30 years, without any proof of inquiries at the place where he was last known to be alive, and without evidence showing any such relation between him and his family as would induce him to correspond with them.

2. SAME—SHARES UNDISPOSED OF—DEPOSIT WITH COMPTROLLER.

    Where, on a proceeding for the distribution of an estate, the evidence is insufficient to determine whether a legatee was alive or dead, or whether he left issue entitled to his share, the remainder of such estate may be distributed, and such share deposited with the comptroller to preserve it until proper proof can be made.

Appeal from judgment on report of referee.

Action by Samuel F. Dunn and others, trustees under the will of Jacob Travis, deceased, against James Harvey Travis, impleaded with others, for a judicial construction of decedent's will as to the distribution of the residuary estate, and to determine who were entitled to share therein. From a judgment on report of referee ordering a portion of such residuary estate deposited with the comptroller, James Harvey Travis appeals. Affirmed.

Argued before PATTERSON, HATCH, RUMSEY, and INGRAHAM, JJ.

John Berry, for appellant.
Wilson M. Powell, Jr., for respondents.

PATTERSON, J. The plaintiffs, trustees under the last will and testament of Jacob Travis, deceased, brought this action, setting forth in their complaint, among other things, that in the distribution of the residuary estate of their testator under the provisions of his will various questions and doubts had arisen, or would arise, respecting such distribution, and the aid and instruction of the court was sought in the ascertainment of the rights of the various distributees entitled to that residuary estate. Construction of the will was sought as to such distribution, and the court was asked to declare who were entitled to share in the residuary estate. A great many persons were made parties defendant, and, among others, the surviving children of Jacob Travis, a cousin of the testator, including one "James Travis, if living, and the executors, administrators, legal representatives, widow, devisees, heirs at law, and next of kin of said James Travis, if deceased, who are unknown to plaintiffs." The accounts of the plaintiffs of the residuary estate were brought into the action for settlement. Answers were interposed by the defendants, and among them one by James Harvey Travis, who was a son of William Travis, a brother of the testator. Upon the issues joined by all the pleadings, construction was given to the will of the testator by a referee, who found that the residuary estate was divisible into 390 parts, and he adjudged that it should be distributed in certain proportions among various persons entitled thereto under the fourteenth clause of the will; that $30/390$, or $1/13$, of the whole residuary estate belonged to one James Travis, a son of the testator's cousin Jacob Travis; and that such $1/13$ should be deposited with the comptroller of the state of New York, it not appearing whether such James Travis was alive or dead, or whether he left children who would take by representation the share to which he would be entitled had he survived the testator. The fourteenth clause of the will, by which the residuary estate was disposed of, reads as follows:

"Fourteenth. At the death of my said wife and my said daughter Josephine Louisa, I direct my executors to convert my entire estate then remaining, real and personal, into money, and I hereby authorize and empower them to sell such real estate at public or private sale at the best prices that can be obtained, and to execute and deliver good and sufficient deeds of conveyance therefor; and I will, order, and direct that all of said proceeds of such rest. residue, and remainder of my estate be divided among and paid over, share and share alike, 'per capita, and not per stirpes,' to my said granddaughter Nellie Wiley, my nephew Jacob Ryerson, and the children of my brother John Travis, and the children of my deceased brother, William Travis, and the children of my deceased cousin, Jacob Travis, absolutely; and if any one of said children shall have died, leaving issue, such issue to take by representation the share of the one so dying."

All parties to the suit appear to be content with the disposition of the residuary estate made by the referee, and the judgment entered in accordance therewith, except James Harvey Travis, the appellant, who insists that the referee should have found that the $1/13$ directed to be deposited with the comptroller of the state of New York should be distributed among the other persons entitled under the fourteenth

clause, it being claimed that James Travis (the son of the testator's deceased cousin, Jacob Travis) was presumed to be dead, without issue, at the time of the death of the testator. The will of Jacob Travis, the testator, was executed in October, 1883. He died in August, 1884, and his will was admitted to probate in September, 1884. Among the children of his cousin Jacob Travis, mentioned in the fourteenth clause, was James Travis, who, in 1852, being about 16 years of age, shipped at New Bedford on a ship bound on a whaling voyage; and he left that ship at the Bay of Islands, in New Zealand, in 1855, nearly 30 years before the death of the testator. Since that time he has never been heard from. The appellant contends that James Travis was presumably dead, without issue, at the time of the death of the testator, and that, therefore, the share of the residuary estate which has been reserved should have been distributed by the judgment entered herein, and that the referee should have found that he (James Travis) was either dead or alive when the report was made in this action. The argument of the appellant proceeds upon the theory that there is in the record sufficient proof to require the application of the presumption of death after seven years' absence. The last that was heard or known of James Travis was in 1855, when he left the whaling ship at a port in New Zealand. There is a presumption of law that he was alive until 1862. The appellant contends that the presumption of life was then displaced by the presumption of death; but the latter presumption is one which is not self-effective, but is only applicable under conditions well recognized in the adjudicated cases. The history of the presumption of life or of death of an absent person is very instructively given in the opinion of Surrogate Bradford in the case of Eagle v. Emmet, 4 Bradf. Sur. 117, and in speaking of the two presumptions the learned judge remarks that the practical effect of these two rules, if both are to be taken as subsisting, is that whenever the law is invoked as to rights dependent upon the life or death of an absent party he is to be deemed as living until the seven years have expired, and after that he is to be deemed as dead; but that is subject to the qualification that his departure was under such circumstances as would indicate that he would communicate with his relatives left behind him, and that they had made reasonable and diligent inquiry as to his whereabouts at the last place at which he was known to be alive. In Davie v. Briggs, 97 U. S. 628, 24 L. Ed. 1086, the court says·

"The general rule undoubtedly is that a person shown not to have been heard of for seven years by those, if any, who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death."

The difficulty in the present case is not with the presumption, but with its application. This youth shipped under the name of James Wilson,—that being the name of his step father. He went to New Bedford, and started upon the adventurous life of a whaler. He left his ship in New Zealand in 1855. It is not shown that during the whole three years he was on that ship he ever communicated with any member of his family. It is assumed that his leaving the

ship was a desertion. There is nothing in the record to show that any actual effort was made on the part of any one of his family to ascertain whether he was alive or dead until 1886. There are some vague statements that his mother and others made inquiries after the return of the ship on which he sailed, but that is so utterly general that it proves nothing. When this testator died, and it was ascertained that the missing person was interested in the estate, inquiries were set afoot in 1886; but, singularly enough, they were not directed to New Zealand, the place at which he was last known to be alive. There is nothing in the record to show that such relations existed between this absent man and his family as would induce him to correspond with them, or give them information as to his whereabouts. There is nothing to show that he expected an inheritance, as the child of a deceased cousin of a rich testator, of whose existence he might not even have been aware. We think the referee was right in refusing to distribute this share upon a mere "presumption of death without issue," in the absence of more satisfactory proof of diligent inquiry in the proper place as to his death without issue; for by the provision of the fourteenth clause of the will, above quoted, there was a substitutionary gift; and, while isolated cases may be found to the effect that after 30 or 40 years a presumption of death without issue of a person not heard from will be indulged in, the tendency of the courts in modern times is quite to the contrary, as is illustrated by the cases of Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, and Dworsky v. Arndtstein, 29 App. Div. 274, 51 N. Y. Supp. 597. The disposition made by the learned referee of the 1/13 of the residuary estate referred to was, under the circumstances, judicious and proper. There is nothing in the judgment entered upon his report which prejudices the rights of any one to that share if it has lapsed. On the presentation of proper proof in a proper proceeding the reserved fund may be distributed, and the only effect of the judgment entered is to preserve the fund directed to be deposited with the comptroller until that proper proof can be made.

The judgment should be affirmed, with costs. All concur.