(118 App. Div. 777)

WADICK v. MACE.

(Supreme Court, Appellate Division, First Department. April 19, 1907.)

1. VENDOR AND PURCHASER—CONTRACT—CONSIDERATION.
	Where plaintiff paid $1,000 on the making and delivery of a contract for the sale of land, and subsequently paid $500 to secure an extension of the time of performance, the contract was based on a sufficient consideration.

2. CONTRACTS—MUTALITY.
	Where a contract for the sale of land bound the vendor to deliver a proper deed on payment of the sums agreed on and the execution and delivery of a purchase-money mortgage, and obligated the vendee to make such payments and accept "a proper deed," or in default to forfeit the $1,000 paid, it was not void for want of mutuality of obligation, though the vendor had waived her right to enforce specific performance by stipulation while the vendee had not.

3. VENDOR AND PURCHASER—MARKETABLE TITLE.
	A purchaser is entitled to a title that will enable him to hold the land in peace, and, if he wishes to sell it, to be reasonably sure that no fault or doubt will arise to disturb its market value, and is not required to accept a deed which he will be compelled to defend by litigation.
	[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 245, 246.]

4. SAME—COMPLIANCE WITH CONTRACT—DEED—DESCRIPTION.
	A contract to convey land described therein as the most southerly 20 acres of a tract described required the vendor to execute and deliver "a

proper deed," with the usual covenants conveying the property in fee simple free from all incumbrances, except, etc. It was thereafter agreed that the 20 acres should be surveyed, which was never done, but it was discovered that it carried across a street of which both parties had notice and deprived the vendor's remaining property along such street of frontage thereon, whereupon she tendered a deed in the language of the contract. *Held*, that such deed required a judicial construction to identify the premises conveyed, and was therefore not "a proper deed," as required by the contract.

Appeal from Special Term, New York County.

Action by Arthur H. Wadick against Melinda G. Mace for specific performance of a contract for the sale of land. From a judgment in favor of defendant, plaintiff appeals. Reversed.

The material parts of the contract are here set out:

"An agreement made the 26th day of January, 1905, between Melinda G. Mace, party of the first part, and Arthur H. Wadick, party of the second part, in manner following: The said party of the first part, in consideration of the sum of $115,000, to be fully paid as hereinafter mentioned, hereby agrees to sell unto the party of the second part all that certain tract of land situate, lying and being in what was formerly the town of Westchester * * * but now a part of the Twenty-Fourth Ward, borough of the Bronx * * * and known as the most southerly twenty acres of the Levi H. Mace farm, nearest Bronxdale, and running from the White Plains Road to Boston Road and bounded and described as follows: Northerly by the remaining portion of the said Levi H. Mace Farm; easterly by the Boston Road; southerly by the Wolff Estate, and westerly by the White Plains Road.

"And the said party of the second part hereby agrees to purchase said premises at the said consideration of $115,000, and to pay the same as follows: $1,000 upon the signing of the within contract, the receipt whereof is hereby acknowledged; $27,750 in cash upon the closing of title and delivery of deed. The balance of $86,250 to be secured by a purchase money mortgage upon said premises to bear interest at the rate of five per centum per annum, payable semi-annually, and to run for a term of five years."

It was further provided that, if the party of the second part made default, then the contract ceased, and the deposit of $1,000 should be retained by the party of the first part as and for liquidated damages, and no suit shall be maintained for specific performance or damages, and "the said party of the first part, on receiving such payment of $115,000, at the time and in the manner above mentioned, shall at her own proper costs and expenses execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered to the said party of the second part, or to his assigns, a proper deed containing a general warranty, and the usual covenants for the conveying and assuring to him or them the fee simple of said premises, free from all encumbrances, except any tax or assessment becoming a lien after the date of this agreement, * * * which said deed shall be delivered on or before March 27th, 1905, at twelve o'clock noon, at the office of Arthur H. Wadick."

On the 4th day of March, 1905, the party of the second part paid to the party of the first part $500 for an extension of 30 days. After the delivery of the contract, the party of the first part agreed to have made a survey of the 20 acres, so as to locate the same by a definite boundary. That was never done. After much delay, the party of the first part tendered to the defendant a deed containing the identical description set out in the contract. This was refused by the party of the second part. This action was then brought, and upon the trial the court dismissed the complaint upon the merits. From the judgment thereupon entered, the plaintiff appeals to this court.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Ernest Hall, for appellant.
Ralph Hickox, for respondent.

LAMBERT, J.   The contract in question meets all the requirements which the courts have laid down for the exercise of equitable power of enforcing specific performance.   These requirements are summarized by Mr. Pomeroy, in his work on Equity Jurisprudence (3d Ed., vol. 4, § 1405), as follows:

"It [the contract] must be upon a valuable consideration.  It must be reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made.  It must be, in general, mutual in its obligation and in its remedy.  The contract must be free from any fraud, misrepresentation, even though not fraudulent, mistake or illegality.  *  *  *  The contract must be perfectly fair, clear and just in its terms and in its circumstances.  The contract and the situation of the parties must be such that the remedy of specific performance will not be harsh or oppressive.  The vendor's title must be free from reasonable doubt."

The defendant does not suggest that the contract is lacking in any of these elements.   It certainly is upon a valuable consideration, for the plaintiff paid $1,000 upon the making and delivery of the contract, and subsequently paid $500 to secure an extension of the time of performance.   It is certain as to its subject-matter.   It is mutual in its requirements and its remedies.   The obligation on the part of the defendant is to deliver "a proper deed" upon the payment of the sums agreed upon and the execution and delivery of a purchase-money mortgage, and the obligation of the plaintiff is to make such payments and to accept "a proper deed," or, in default of such performance, to forfeit the payment of $1,000 which he made upon the delivery of the contract.   It is true that the plaintiff has a right of action for specific performance, and that the defendant has waived her corresponding right by stipulation; but in lieu thereof there was secured to her $1,000 for an option on the premises for a limited time.   On the default of the plaintiff, she was entitled to retain the $1,000 and end her obligation under the contract.   On the default of the defendant, the plaintiff was left to his remedies in the courts.   Plainly stated, then, we have a contract for "the most southerly twenty acres of the Levi H. Mace farm," at a given price per acre, aggregating $115,000.   No one intimates that there was any mistake about this, though it developed upon the trial of the action that, when the defendant came to make an investigation, it was found that the "most southerly twenty acres of the Levi H. Mace farm" carried the northern boundary over a certain highway known as "Bleeker Street" or "Allerton Avenue," and that this would operate to cut the defendant's remaining property off from the highway for a considerable distance.   But the defendant knew of this highway.   She had been paid by the city of New York for the very premises involved in the change of this highway several years before, and the roadway was in course of construction at the time the contract was executed.   There is nothing to show that the plaintiff knew of this situation more than the defendant, and, while it is probably true that the parties at the time of making the contract did not contemplate the result as later disclosed, there is no valid reason, even if that be true, why the plaintiff should be denied the benefits of his contract as to all of this property, which has concededly increased in value since he assumed the risks of the purchase.   The result of the judgment, as it now stands, is to permit the defendant to

violate the obligation of her contract to the detriment of the plaintiff, who has been and still is ready to perform his part of the agreement. In fairness and in equity, the plaintiff has a right to the benefits of his contract.  He paid $1,000 down, and subsequently paid $500 for the privilege of having the time extended, and, if he had not been prepared to perform his contract within a reasonable time, he would, by the terms of his agreement, have forfeited the deposit of $1,000, and it may be of the $500, while, if the defendant is called upon to specifically perform her contract, she will only be accepting the amount of money which she agreed was a fair price for the 20 acres involved in the transaction.

It developed upon the trial that the defendant, after discovering the fact that the northerly boundary would carry the line north of the highway, put off the time of closing title, and finally tendered the plaintiff a deed in the language of the agreement, which failed to define the northern boundary; and this is made the basis of the decision adverse to the plaintiff by the learned Court at Special Term. The opinion says that:

"Under the circumstances presented, the defendant performed her whole duty in tendering to the plaintiff a deed in accordance with the terms of their contract. Upon his failure to perform on his part, she was entitled to terminate their relations."

It seems to us that this completely ignores the rights of the plaintiff.  The deed, in the language of the contract, was not "in accordance with the terms of their contract," for the terms of their contract required that the defendant should deliver to the plaintiff or his assigns "a proper deed  *  *  *  for the conveying and assuring to him or them the fee simple of the said premises, free from all encumbrances."   Counsel for respondent, in his brief, concedes that the deed tendered would have to depend upon judicial construction to identify the premises conveyed.   Certainly such a deed was not what the parties had in mind in the use of this language.   The respondent's brief, after practically conceding that the purpose of the defendant was to back out of her contract when she found that the premises would reach north of the highway, says:

"It did not seem to defendant's attorney that plaintiff was entitled to an election as to what he would take, and plaintiff was tendered a deed in the language of the agreement, accepting which he might have a judicial construction of the description, or, if he was unwilling or unable to take up his option, he might receive back his money and the matter be ended.  *  *  *  On the other hand, this solution was apparently fair to defendant, no change in values having taken place, and a judicial construction of the description presumably protecting defendant's rights."

But why, if the plaintiff was unable or unwilling to take up his option, should he receive his money back?  His contract provided, if he failed to perform, that this money should be forfeited to the defendant;  but the latter actually sent him a check for the advances made, which was returned to the sender, and this court is asked to sanction the doctrine that the tender of a deed which concededly imposed the burden of a lawsuit upon the plaintiff, to establish his right, was the tender of "a proper deed  *  *  *  for the conveying and assur-

ing to him or them the fee simple of the said premises, free from all encumbrances.". While it is probably true that the entailing of an action in the courts would not be an "incumbrance" in a strict legal sense, it would, nevertheless, be a decided disadvantage, and a deed involving such a result would not constitute "a proper deed." The fair construction of the language is that the defendant will give "a proper deed" and thereby convey a "marketable title," and this has been judicially defined to be "one that is free from reasonable doubt." There is reasonable doubt when there is uncertainty as to some fact appearing in the course of its deduction, and the doubt, of course, must be such as to affect the value of the land, or will interfere with its sale. A purchaser is not to be compelled to defend by litigation. He should have a title that will enable him to hold his land in peace, and, if he wishes to sell it, be reasonably sure that no fault or doubt will arise to disturb its market value. Vought v. Williams, 120 N. Y. 253, 257, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634. A deed in the language of the contract is not such a deed as the plaintiff contracted for, and the defendant never having been ready and willing to tender "a proper deed," the plaintiff could not be in default, even though, as urged by the respondent, he did not have the necessary funds on the day when the transaction was to be closed. The obligation of the plaintiff to make further payments was contingent upon the defendant's being able and willing to tender a proper deed, and, until that was done, the plaintiff could not be in default. Glenn v. Rossler, 156 N. Y. 161, 50 N. E. 785.

Apart from the legal conclusion that the plaintiff was not in default, it is apparent that the defendant did not consider him in default, and that is evidenced by the effort to refund his money when, under the terms of his contract, the money belonged to her if the plaintiff neglected or refused to perform his part of the contract. In this view of the case, it is not important to consider whether the defendant did or did not agree to furnish a survey. She never tendered a proper deed of the premises which the plaintiff contracted to purchase, and she to sell, and, whatever right she may have had to a reformation of the contract, upon the ground of mistake as to the effect of the sale of the most southerly 20 acres of the farm, she has no right to deprive the plaintiff of all the benefits of his investment and his foresight in purchasing the property. It may be, in the exercise of sound discretion, that the trial court, upon a retrial, will not compel execution of the contract by directing a conveyance which will include a strip of land north of Bleeke. street, for the obvious reason that the parties did not have that in contemplation at the time of making the contract of sale. They, no doubt, acted upon the assumption that a conveyance of the southerly 20 acres would carry the northerly line to the southerly boundary of Bleeker street, or some point south of it. This is matter to appear by the contract of the parties. Upon a discovery that a conveyance of the 20 acres would extend the line about 15 feet north of Bleeker street, the vendor refused to convey by definite boundaries, and the vendee offered to take a conveyance which would locate the line on the southerly line of Bleeker street and take compensatory land at some other point.

It is the highest function of equity to carry into effect the intention of parties, where it can be done upon terms of equality. Support for such a determination as above indicated is also found in the well-settled principle of equity that specific performance will not be decreed where its effect will be harsh, oppressive, or damaging to one far beyond the benefits conferred upon another. In this case, it is apparent that the deprivation of street frontage to the remaining land of the vendor would impose injury and damage incalculably in excess of benefits to be derived by the vendee. It may be assumed as a fact resulting from the situation that a strip about 15 feet wide north of Bleeker street would not be of any value to the vendee, while its loss to the vendor would destroy the market value of lands lying north of it.

These considerations are for the initial court. Upon the trial had, the court held that a tender of a deed in the language of the contract was a tender of performance by the vendor, and its refusal by the vendee operated to discharge the obligations of the parties to the contract. By this decision, and the judgment following it, the defendant was given affirmative relief upon her contract obligations, upon mere denial of some of the incidental allegations of the complaint, and as to all of which, so far as they are material, the evidence supports the contention of the plaintiff. This she is clearly not entitled to. She owes the plaintiff some duties under her contract, no part of which she has in good faith performed.

Upon the pleadings and proof taken, the plaintiff is entitled to some substantial measure of relief, and the case is returned to the court of equity, where the parties may be heard upon the equities.

The questions under discussion have been sufficiently raised by exceptions, and the conclusion is reached that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. If the wisdom of the trial court so suggests, the English rule, approved in Phillips v. Thompson et al., 1 Johns. Ch. 132, 150, of appointing a referee to work out and report a scheme of equitable performance of the contract, may be adopted. All concur.