MATHEWS v. CALDWELL et al.
(No. 426–3845.)

(Commission of Appeals of Texas, Section B. Feb. 27, 1924.)

**1. Vendor and purchaser ⬤�longrightarrow141—Contract held to require purchaser to point out defects in abstract.**

Under a contract requiring vendor to furnish an abstract showing good and marketable title and providing for curing defects pointed out by purchasers, *held*, that it was purchaser's obligation to point out the defects so that they could be cured by vendor.

**2. Vendor and purchaser ⬤⟶185—Vendor not in default because of failure to perform due to vendee's default.**

Where vendees defaulted, vendor's resulting failure to perform did not constitute a default by the vendor.

**3. Vendor and purchaser ⬤⟶140—Abstract certified to date of delivery held "complete abstract."**

Under a contract requiring vendors to deliver a complete abstract to the vendees, a "complete abstract" is one certified to the date of its delivery to the vendees, and there is no obligation that the abstract itself be satisfactory or perfect.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Complete Abstract.]

**4. Vendor and purchaser ⬤⟶137—Stipulation for attorney's approval of title did not permit disapproval if title tendered good against objections.**

A contract, stipulating as a condition of vendee's performance that title should be finally approved by purchaser's attorney, did not permit disapproval if title tendered was good, merchantable, and sufficient against objections; contract calling for that sort of title as against objections to be made.

**5. Damages ⬤⟶81—Deposit as "forfeit and liquidated damages" held liquidated damages and not penalty; "forfeit."**

A contract for the sale of land providing that a specified sum was deposited by purchaser "as a forfeit and liquidated damages" for failure to comply with the contract *held* not an agreement for a penalty; "forfeit" in ordinary usage meaning loss, and the quoted phrase meaning "loss to purchaser and liquidated damages to vendor," in view of the fact that the deposit was only one-tenth of the purchase price, and that the subject-matter of the agreement was oil, gas, and mineral land subject to an oil lease having an unknown and unappraisable value.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forfeit—Forfeiture.]

**6. Vendor and purchaser ⬤⟶148—Vendor not required to tender conveyance where it would not be accepted.**

Where purchaser repudiates his agreement to purchase, and a formal tender of conveyance would not be accepted, vendor is not in default for failing to execute and tender a proper conveyance.

**7. Vendor and purchaser ⬤⟶329—Evidence held to warrant finding of vendee's default.**

In vendor's action for liquidated damages, evidence *held* sufficient to warrant a finding that vendee defaulted and that a formal tender of conveyance would not have been accepted.

**8. Abstracts of title ⬤⟶1—Abstract referring to "Patent No. 94, Vol. 44," held clearly to refer to volume in General Land Office.**

A recital in an abstract that the property was patented "by Patent No. 94, Vol. 44," *held* to clearly show the volume in the General Land Office, in which the patent was recorded, in view of the well-known practice of the General Land Office, and of other state departments, of attorneys and abstractors generally, and of Rev. St. arts. 7552–7554.

**9. Public lands ⬤⟶176(2)—Patent recorded in Land Office notice without recording in county.**

Under Const. art. 14, § 1, Rev. St. arts. 5280, 5361, and article 5376, as amended by Acts 1918, 4th C. S., c. 47, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 5376), a patent recorded in the General Land Office is notice to all the world, and a patent issued in 1880, which under the law then in effect was only required to be recorded in the General Land Office, was valid against all who might otherwise be innocent purchasers without recording it in the county in which the land was located.

**10. Vendor and purchaser ⬤⟶130(2)—Patent recorded in General Land Office held to satisfy requirement of good and merchantable title.**

Under a contract requiring a good and merchantable title, no legal objection could be made to a title under a patent recorded in the General Land Office on the ground that it was not recorded in the county of the situs of the land.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by W. R. Mathews against Walter D. Caldwell and another. From a judgment of the Court of Civil Appeals (241 S. W. 798) affirming a judgment in favor of the named defendant, plaintiff appeals. Reversed and rendered.

J. R. Stubblefield, of Eastland, and Patterson & Sherry, of Cisco, for appellant.

Scott, Brelsford, Funderburk & Ferrell, of Eastland, for appellee First State Bank of Eastland.

Conner & McRae, of Eastland, for appellee Caldwell.

STAYTON, J.   The controversy in this case arises mainly over the construction of a written contract of sale of oil, gas, and minerals in and under land. The controlling vendor sued for liquidated damages. It was held in the courts below that he could not recover because he was himself in default. The wording of the contract is important in the consideration of all of the questions that arise, and especially those requiring inquiry as to whether the abstract that was furnished was sufficient, if legally good as against objections "pointed out," though defective otherwise in both form and substance; whether, in all events, the title presented must have been satisfactory to the purchaser's attorney, regardless of his previous written objections; and whether the money sued for was liquidated damages, or a penalty that could not be recovered. The body of the instrument in question is quoted (with several minor typographical errors corrected):

"This memorandum of an agreement, this day made and entered into by and between W. R. Mathews and wife, S. V. Mathews, of the first part, and Walter D. Caldwell, of the second part, witnesseth:

"That the parties of the first part covenant and agree to make, execute and deliver to the party of the second part a good and sufficient mineral conveyance, with covenants and general warranty, transferring and conveying unto the party of the second part one fourth of all the oil, gas, petroleum and other minerals and mineral substances in and under the N. W. ¼ of section No. 23 in block No. 4, H. & T. C. Ry. Co. survey of lands in Eastland county, Texas, subject to an oil and gas lease on said lands.

"That the parties of the first part further covenant and agree to furnish unto the party of the second part a complete abstract, showing a good and sufficient and merchantable title to said lands and said mineral interest to be conveyed, provided same can be done under the terms hereinafter set forth.

"That in consideration of the premises the said Walter D. Caldwell covenants and agrees and promises to pay unto the parties of the first part the sum of seventeen thousand dollars for such mineral interest, conditioned:

"That the abstract of title agreed to be fur-nished, as aforesaid, shows a good and merchantable title to said lands and said mineral interest.

"That the attorney for the party of the second part shall have five days from and after the date of the delivery of said abstract of title to the said attorney in which to examine said title.

"That the party of the second part hereto shall place, in escrow, with these presents the sum of seventeen hundred dollars in the First State Bank of Eastland, Texas, as a forfeit and liquidated damages, for a failure on the part of the party of the second part to comply with the terms of this agreement and on his part to be performed.

"That should said title prove to not be a good and merchantable title then said forfeit shall be returned to the said party of the second part and this contract and agreement shall become null and void, the said party of the second part being allowed the option to accept or reject such title notwithstanding any defects in the title thereto.

"That should there appear any defects in said title then the same shall be pointed out by the attorney examining the same in writing, and the parties of the first part shall have two days in which to cure the same, but should it appear that such defects cannot be cured within said two days, then and in that event this contract and agreement shall become null and void, unless waived by party of the second part, but the parties of the first part shall exercise due diligence in trying to cure the same within said two days.

"That should the title to said lands and said minerals conveyed be approved by the attorney for the party of the second part then the First State Bank is authorized to deliver unto parties of the first part said forfeit money as a part of the consideration to be paid for said mineral interest, upon the execution, and approval of a good and sufficient mineral conveyance unto the said party of the second part, and said party of the second part paying the balance of said purchase price."

[1, 2] If the title exhibited by the abstract that was delivered was in any respect not "good, sufficient and merchantable," it was the purchaser's obligation to point out the defects so that they could be cured by the vendors.   He indicated three defects, two of which were immediately rectified, and the third of which, relating to the validity of the patent to the land, will be considered presently.   As to any others, he first was in default of the contract; and the resulting failure by vendors, in respect to duties conditioned upon the performance of his prior duty, cannot be held to constitute default on their part.   No advantage may accrue to him from breach of his own duty.   Lieber v. Nicholson (Tex. Com. App.) 206 S. W. 512; Davenport v. Sparkman (Tex. Com. App.) 208 S. W. 658.

This principle must be applied to all substantial defects in the showing of title, including those involved in the scope and applicability of the certificates to the abstract.

[3] But, at least as abridged in the statement of facts, the abstract contains formal flaws, as distinguished from substantial defects. There was no provision in the contract for pointing out objections to the abstract itself and there was no allegation of waiver. The question is: Was there, in spite of those insufficiencies of form, a performance of the contract as to the furnishing of "a complete abstract, showing a good and sufficient and merchantable title"? For that was the only obligation undertaken in .that respect. The petition alleged that an "abstract" was furnished. The answer admitted that it was "some character of abstract." The agreed facts stated that it was "the abstract to said lands." The written opinion of the attorney, his testimony, the testimony of all the other witnesses, the findings filed by the trial judge, and the opinion of the Court of Civil Appeals, established the fact that it was an "abstract." It is conclusive, therefore, that an "abstract" was furnished. This pamphlet was certified up to the date of its delivery; and, as admitted in the answer, was furnished "within the time specified" in the contract. This made it a "complete" abstract. Davis v. Fant (Tex. Civ. App.) 93 S. W. 193; 39 Cyc. 1517. There was no obligation that the abstract itself be satisfactory, flawless, or perfect; and probably for good reason. That end is practically impossible to attain. The obligation was merely that it be "a complete abstract," which, as has been seen, it was; and that it be one "showing a good and sufficient and merchantable title." But, as already observed, it only had to show that sort of title as against the written objections of the attorney. It finally did so as to two of the objections, and whether it did so as to the third remains to be considered. The abstract then, as an abstract, was a compliance with the contract only in the event that this third objection was untenable.

[4] The same consideration controls the purchaser's contention that the concluding paragraph of the the contract required, as a condition of vendors' performance, that the title should be finally "approved" by purchaser's attorney, regardless of his previous written objections. The contract must be taken as a whole. The last part must be read in the light of the first part, which provided that the title only had to be "good, merchantable and sufficient" as against the written objections of the attorney to "defects" in that respect. If it was that quality of title, it had to be approved, and any 'disapproval of it would be both contrary to the real intention of the contract and arbitrary, in the sense .of immaterial, insubstantial, and invalid. As said in Kirkland v. Little, 41 Tex., 456, it was not the legal effect of this agreement that the purchaser "might refuse.payment for any mere captious or unreasonable objection to the title. His dissatisfaction must be founded upon some valid and legal objection." Hence the present contention must be measured by the consideration of whether the written objections of the attorney were valid and legal; and, since two of them were admittedly cured, the question narrows down to a consideration of the third. Before examining this objection, some of the other contentions of the purchaser may be conveniently discussed.

[5] It is suggested that the provision in the contract that the sum of $1,700 was deposited "as a forfeit and liquidated damages" for failure on purchaser's part to comply with the contract was, by reason of the use of the word "forfeit," there, and elsewhere in the instrument, an agreement for a penalty. The word in. ordinary usage means "loss." The quoted phrase means "loss to purchaser and liquidated damages to vendor." Eakin v. Scott, 70 Tex. 442, 7 S. W. 777; Yetter v. Hudson, 57 Tex. 604 (see the record in the case); Norman v. Vickery, 60 Tex. Civ.. App. 449, 128 S. W. 452; Nelson v. Butler (Tex. Civ. App.) 190 S. W. 811.

That "liquidated damages" was intended is corroborated by the considerations that the deposit was only one-tenth of the purchase price, no disproportion to value or market value was shown or suggested, none of the usual signs of a penalty were present, the instrument provided for extraordinary haste in closing, the subject-matter of the agreement was oil, gas, and minerals, subject to an oil lease, and its value was necessarily unknown and unappraisable, especially upon the "oil market," adverted to in the purchaser's argument. Collier v. Betterton, 87 Tex. 440, 29 S. W. 467; Simkins on Equity, 631-635; 17 C. J. 932-947.

[6, 7] The Court of Civil Appeals found that tender of conveyance by vendors was not necessary to a recovery in this suit because the evidence showed a repudiation of the contract by the purchaser, and that a tender would not have been accepted if made. The testimony and admissions were entirely in favor of this conclusion, and, while all that took place in that respect was through an attorney who later testified at the trial that he did not know whether he had authority to accept a conveyance if one had been offered, the finding of the Court of Civil Appeals, in the state of the record, is necessarily conclusive as to his having had authority. The basis of the court's conclusions is apparent. The contract provided, as has been noticed, that the title (as against the objections to defects) should be finally approved by purchaser's attorney, and, in this connection, that the conveyance should be approved—as conditions precedent to the consummation of the deal. The attorney who testified stated that he was the purchaser's attorney at that stage of the transaction. The purchaser alleged, in sub-

stance, that the objections made by his attorney were not cured, and therefore that the contract was rendered null and void. His opponent testified that he met this attorney on the last day for performance for the purpose of closing, and that at such time the vendors were ready, willing, and able to make the conveyance. There was, in fine, evidence that at that juncture the attorney gave it to be understood that he would not accept the title or the conveyance because the abstract did not show title, in that the patent had not been recorded in Eastland county and that vendors' attorney, consequently, did not prepare a conveyance and the vendors did not execute one. There having been a repudiation, then, tender would have been useless. In such a case, where the rejection of further performance is not rightful, and it was not rightful here, the necessity for tender on the part of the vendors is obviated. Bluntzer v. Dewees & Hinkle, 79 Tex. 275, 15 S. W. 29; 38 Cyc. 134–136; Porter v. Memphis Land Co. (Tex. Civ. App.) 159 S. W. 497; 3 Elliott on Contracts, 128; 13 C. J. 726, 727. The Court of Civil Appeals was not put to finding this situation on account of express declarations of the parties, nor that it was established by direct testimony and admissions. Within the scope of its jurisdiction over the facts, it could have based its conclusion upon even an implied repudiation and consequent avoidance of tender, proved by circumstantial evidence. There was sufficient basis for its holding.

[8] The conclusion that the repudiation was not rightful is rested upon the same considerations as attend solution of the question of whether or not the vendors, as against the third and last of the objections made by the attorney—being that involving the patent to the land—furnished "a good, sufficient and merchantable title."

The portion of the abstract to which this objection was made read (signature omitted):

"The patent to section 23, block 4, H. & T. C. Ry. Co. survey is not recorded in Eastland county, but the printed abstracts furnished by the General Land Office at Austin show that same was patented to H. & T. C. Ry. Co. on January 23, 1880, by Patent No. 94, Vol. 44:"

The attorney's only objection to this showing read:

"There is no patent of record to this land; for the nominal cost of $1.25 a copy of such patent can be secured from the land commissioner and should be secured and placed of record."

It will be observed that this objection, to use the words of the contract, "pointed out" only one feature as a defect—lack of record. It did not involve the form, manner, or sufficiency of the abstract, as such, nor its source, whether from a record or otherwise, nor the sufficiency or validity of the patent, except in that single respect. Indeed, it admitted there was a patent to the land. Another part of the same opinion, moreover, reported that the "title to the fee" was in the vendor, W. R. Mathews. No importance may be placed upon the fact that, in response to the objection and at some expense, the copy of the patent was procured from Austin and was actually placed of record in Eastland county, two days afterward, because the trial court found that it came too late and that time was made of the essence of the contract by vendors' insistence, and because there was no pleading to raise an issue of waiver or estoppel; but, aside from that, the objection, as made, presented the sole point that the title was not in conformance with that contracted for, because the patent was not of record.

The objection was probably not intended to mean that there was no registration in the General Land Office, but simply that there was none in Eastland county. That was the interpretation, as the record manifests, of the attorney who acted in place of the purchaser, of vendors, of the district court in its findings of fact, and of the Court of Civil Appeals, in its findings. It was also clearly the effect of the abstract, which in describing the patent, used the abbreviation "Vol. 44." That abbreviation, in that connection, shows the volume in which the patent was recorded in the General Land Office. The well-known practice of that office, of other departments of this state, of attorneys, and of abstracters generally, and the statutory recognitions of the fact (R. S. arts. 7552–7554) justify that conclusion. There being no statement, indication, or intimation to the contrary, the abstract, without doubt, asserted that the patent was of record in the General Land Office and that it was issued in 1880. If recording was a prerequisite, it shows that fact; as does, also, the presumption that the officers in the General Land Office did their official duty in recording it under R. S. art. 5280.

[9, 10] But it seems to be contended that, to be valid or to show a good, sufficient and merchantable title out of the state, the patent should have appeared of record in Eastland county where the land lay. Whether the point is well taken as a general rule is not involved. In 1880, when this patent was issued, as the abstract shows it was, patents were required only to be recorded in the General Land Office and were, if intrinsically good and if recorded in that office, valid against persons who otherwise would be innocent purchasers for value and, in fact, against the whole world. Evitts v. Roth, 61 Tex. 81; Constitution, art. 14, § 1; R. S. arts. 5280, 5361, 5376, and Acts 1918, 4th C. S. c. 47, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 5376). That place of registration, then, answered the requirements as to title in the present contract, in so far as the record of the patent was concerned. The title in that

respect was "free from doubt," in fact was entirely perfect. 27 R. C. L. 482, 483; Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634. No valid or legal objection could be made to it.

The controlling points in the case being questions of law and being in favor of the vendor, who is plaintiff in error here, and the case appearing to have been fully developed below, we recommend that the judgments of the district court and of the Court of Civil Appeals be reversed and that judgment be rendered in behalf of plaintiff in error, W. R. Mathews, to the effect that he have and recover of defendant in error First State Bank of Eastland, and as against, and to the exclusion of all claims of, defendant in error Walter D. Caldwell, the sum of $1,700, together with interest upon such amount from the date of default, August 20, 1919, and that defendant in error Caldwell pay all costs of suit incurred in this court and in the courts below.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for plaintiff in error for $1,700, with 6 per cent. interest on that amount from August 20, 1919, and all costs in all courts as recommended by Commission of Appeals.