Vernon BARTLETT, Appellant,

v.

Paul D. TULLIS, Appellee.

No. 7092.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 5, 1962.

Rehearing Denied March 5, 1962.

Syrian E. Marbut, Lubbock, Aldridge & Aldridge, Farwell, for appellant.

Bill Sheehan, Friona, Cowsert & Bybee, Hereford, for appellee.

CHAPMAN, Justice.

This is an appeal by the defendant below, Vernon Bartlett, from a judgment of the trial court based upon a jury verdict against him and the Friona State Bank for earnest money placed in said bank as part of a real estate transaction in which appellee, Paul D. Tullis, agreed to sell and Vernon Bartlett agreed to buy an irrigation farm near Friona. The bank was made a party to the suit only by virtue of being escrow holder of the earnest money.

The contract of sale provided in part that $5200.00 was to be placed in escrow in the Friona State Bank to be paid by said bank to seller as his liquidated damages in the event the sale failed of consummation through default of the buyer; $12,000.00 cash was to be paid by buyer to seller upon consummation of the contract; buyer was to obtain a first lien purchase money

mortgage of approximately $20,000.00 on the property, with that amount to be paid to seller when the sale was closed; seller agreed to deliver to buyer or his agent within 20 days an abstract of title showing good and merchantable title, with buyer to have 40 days thereafter to cause same to be examined and point out to seller any valid objections thereto in writing; if there were any valid objections the seller was to have a reasonable time in which to correct the abstract and make the title merchantable; and seller excepted from the conveyance an undivided one-half of all oil, gas, casing-head gas and other minerals, the mineral interest having been theretofore reserved by a previous owner of the land.

Upon issues submitted the jury found (1) appellant agreed that appellee should obtain the loan for $20,000.00; (2) the abstract should be delivered to the loan company for examination rather than to himself; (3) he would rely solely upon the opinion of the loan company's lawyers rather than an attorney of his own choice; (4) the Douglas-Bingham Agency did not agree to furnish appellant a copy of the title opinion rendered by the lending agency's attorneys; and (5) that prior to the time appellee substantially altered his position appellant did not inform the Douglas-Bingham Agency that he would not accept the loan in appellant's name. The last two issues were requests made by appellant and given as "Defendants Requested Issue No. 1" and "Defendants Requested Issue No. 2." Frankly, we do not know what is meant in appellant's Requested Issue No. 2 wherein it says, "prior to the time appellee substantially altered his position" but we do not believe an understanding of the clause is necessary to a proper disposition of the case.

From the judgment rendered for the seller, Tullis, for the amount of escrow money appellant, Bartlett, has perfected his appeal based upon the court's failure to give an instructed verdict in his favor; the failure to give certain other special requested issues in addition to the requests given; and for permitting Mr. Tullis "to testify that the title in question had been approved as merchantable by attorneys."

Appellant was unable to negotiate a $20,000.00 loan with only himself on the note and mortgage so the loan company agreed, under the plan shown by the testimony of Robert D. Armstrong, the Northwestern Mutual Life Insurance Company's agent, quoted in this and the next paragraph, to make the loan originating with Mr. Tullis "who now owns the farm and has agreed to sell it to Mr. Vernon Bartlett, but that Mr. Bartlett does not qualify as to his financial statement, but he is to join in the note and deed of trust with Mr. Tullis as contract purchaser, or as receiving a deed if Mr. Tullis decides to give him a deed at that time. All of the details regarding this transaction would be outlined in our loan report which is approved by our Regional Manager in our Dallas Office, by the Farm Loan Department in our Milwaukee Home Office, by the Vice President of the Company, and, in turn, by our Finance Committee. The farm loan commitment would have been voted to Mr. Tullis with the special condition that Mr. Bartlett, as Contract purchaser is to join in the note and deed of trust.

"We have used the above method in making a few farm loans when the farm purchaser appeared to be a satisfactory credit risk and a good farmer, but was short financially. *Actually, what this boils down to is that the present land owner or seller is co-signing the purchaser's note.* After I outlined the method on which we would handle this loan and it appeared to Mr. Bartlett that he could complete the purchase of this farm, he seemed quite pleased and agreed to secure the necessary credit letters from the Citizens National Bank in Lubbock, which he did." (Emphasis supplied.)

From an abundance of proof the jury found that appellant agreed that Mr. Tul-

lis should obtain the $20,000.00 loan on the land in question. He did so and contracted to pay 6% interest, whereas a smaller loan which the $20,000.00 had to retire carried only 4½%.

It is settled law in Texas that in order to test the sufficiency of the probative evidence to determine if it will support the jury's findings we must give credence only to the evidence and circumstances favorable to the findings and disregard all evidence to the contrary, indulging every legitimate conclusion which tends to uphold such findings. Truelove v. Truelove, Tex. Civ.App., 266 S.W.2d 491, 494 (writ refused); Banks v. Collins, 152 Tex. 265, 257 S.W.2d 97. Under this well established rule there is an abundance of evidence to sustain the jury's findings that appellant agreed Mr. Tullis should obtain the $20,-000.00 loan; that the abstract should be delivered to the loan company for examination rather than to himself; that he would rely solely upon the opinion of the loan company's lawyers rather than an attorney of his own choice; and that the Douglas-Bingham Agency did not agree to furnish appellant a copy of the title opinion rendered by the lending agency's attorney.

Under the contract of sale appellee agreed to deliver the abstract to buyer or his agent within 20 days from date. Having made the loan company's attorneys his agent for the purpose of examination of the abstract, even though without their knowledge, that part of the contract was performed by appellee. The buyer was then to have 40 days to cause the abstract to be examined and point out any valid objections thereto in writing to the seller.

The lien to Amicable Life Insurance Company and the oil and gas mining lease dated June 6, 1950 were both pointed out to the loan company and a requirement made that the loan be released at the time of closing. The testimony of John Aldridge, the examining attorney, shows he did not make a requirement of release of the oil and gas lease because he knew from previous experiences that the loan company for whom he was examining the title preferred that the land be leased on which they made loans.

The pointing out of defects in a title within the time provided is as much the duty of a purchaser under a contract of sale so providing as is the furnishing of an abstract the duty of the seller when the contract so provides. Upon such performance depends the obligation of the seller to correct the defects and comply with the legitimate requirements made, and the seller is obligated to correct only the defects pointed out. Lieber v. Nicholson, 206 S.W. 512, 514 (Commission Appeals); Mathews v. Caldwell et al., 258 S.W. 810 (Commission Appeals). The lease was pointed out to the loan company. Of course no requirement was made concerning it for the obvious reason that the examining attorney knew the loan company preferred that it be leased. There is no probative evidence that he knew appellant was depending upon his opinion.

When the $20,000.00 loan to Northwestern Mutual Life Insurance Company was closed the requirements that the smaller Amicable Life Insurance Company loan be released was complied with in accordance with the title opinion. Such loan, it must be remembered, is the one the jury found from sufficient evidence that appellant agreed to participate in under the plan explained by the company's representative, Mr. Robert D. Armstrong.

The next question presented then is whether appellant could defeat recovery by appellee because the loan company's lawyers did not make a requirement in their title opinion to the company that the oil and gas mining lease be released and the company correct the abstract with a showing of the release within a reasonable time, thus showing merchantable title. Under this record we do not believe appellant can justify his default in such manner.

The testimony of A. R. Knight, one of the real estate agents involved, shows as follows:

"Well, we all talked it over there in the office, in their office. And I believe Mr. Douglas, or maybe Bingham, one of them. Anyway, he said: 'You can take it to any lawyer you want to, but getting a loan, it will be examined by the loan company.' And Vernon [Bartlett] says: 'Well, their opinion should be good with that kind of a loan, and it might save me some expense there.'"

Other witnesses corroborated the fact that appellant, in order to save some expense, agreed to accept the title opinion of the loan company's lawyers. Yet, the record shows he never talked to Mr. Aldridge about the title, never asked him if he found any faults with it, or what requirements he made for correction of the abstract. He then hired his own lawyer and his own counsel never did "point out any valid objection thereto in writing to seller," as the contract provided. Had he complied with the contract in this respect it is without controversy in the record that the release of the oil and gas mining lease of record would have been easily accomplished and shown in the abstract. The record shows Magnolia Petroleum Company had owned the lease and had canceled it in 1955, though apparently the cancellation had never been filed of record in Parmer County. Therefore, if the title was less than merchantable because of the failure of the abstract to show the release of the oil and gas mining lease, already released, then we believe the testimony is sufficient as a matter of law to show it was waived. Therefore, the points of error based on the court's refusal to give the numerous requested special' issues inquiring if he waived a merchantable title are without merit, as are those based on the inquiries as to whether appellee tendered a release of the oil and gas mining lease. There is no evidence whatever upon which to base the last mentioned issues, which, under the record before us are immaterial.

The title opinion made a requirement of the release of the deed of trust mentioned therein, which was duly released upon the consummation of the loan acquired by appellee, to which loan the jury found appellant agreed. Accordingly, the points urging error for failure to submit such issues show no merit.

Appellant's 10th point is overruled because the objections for failure to give the No. 3 requested issue quoted in said point does not conform to the requested No. 3 issue actually tendered. They are two separate and distinct issues.

■ Appellant's 11th point asserts reversible error because the court permitted appellee to testify over appellant's objections that the title had been approved by Aldridge & Aldridge as merchantable at the time he bought the land. In the first place such testimony was not proof of the title being merchantable at the time of the instant transaction. Secondly, the title opinion of 1954 made when Mr. Tullis purchased the land was introduced into evidence without objection. Thirdly, even if it could be said that the court was in error in permitting the testimony it was not such as would show reversible error under Rule 434 Vernon's Ann.Tex.Rules of Civil Procedure.

We believe the record when studied as a whole indicates appellant decided after he had entered into the contract that he wanted out of it somehow, perhaps because a more mature consideration dictated the fact that he was assuming a very heavy obligation for his financial ability. However, after appellee had secured the larger loan that required a cent and one-half higher interest rate than he was paying [which he did not need except to perform under the contract] and had ejected his tenant to appellee's loss of more than $1,600.00 grain rent it would be most inequitable to deny appellant the escrow money

under the record made in this case. Appellee continued to offer to perform even at the time of trial. We believe appellant's defense is completely without merit. Accordingly, the judgment of the trial court is affirmed.